RAYMOND OSCAR WILLIAMS V. STATE

No. 32,831. February 22, 1961

*John Cutler*, Houston 2, for appellant.

*Leon Douglas*, State's Attorney, Austin, for the state.

BELCHER, Judge

The prior opinion is withdrawn and the following is substituted therefor.

The conviction is for murder; the punishment, twenty-five years.

The testimony of the state shows that during the morning of March 12, 1959 appellant's brother Robert Williams, the deceased and several other colored men, were engaged in a dice game. During the game Robert accused someone of taking $5 of his money. He did not accuse anyone by name, but pulled his pistol, pointed it toward the deceased, saying he wanted his money as he backed toward the door. After the proprietor heard Robert's statement, he gave him $4.90 and Robert left.

About 3 P.M. the same day, the deceased entered a pool hall where Robert and appellant were. He told Robert that he owed him $5 which Robert denied. The deceased grabbed Robert by the shirt and while they were arguing and scuffling appellant told the deceased that "If Robert owes you $5 I will pay it," then the proprietor ordered them to leave. While they were in a clinch on the outside, Robert had some money in his hand and the deceased was saying, "Pay me my money." At this time the appellant, while waving a pistol, told his brother Robert to move back. When Robert moved back from the deceased, a bystander told appellant, who was still waving his gun, not to shoot the deceased, and appellant replied, "You hush, because I will shoot you too," and then appellant shot the deceased, and after the deceased had turned and was walking away, the appellant again shot him.

Then the appellant and Robert walked away from the scene; and the appellant, about two hours later, told the witness Phelps that "He had shot someone" and showed her a pistol.

Edward Turner testified without objection that later that night appellant was in his cafe pointing a pistol at another person and that he called the police. Officer Ferris testified that when he arrived, he saw the appellant in a house next door to the cafe and saw him place something beside a door which upon recovery was shown to be a .22 pistol containing six live and three spent cartridges. The pistol was identified at the trial as the one used to shoot the deceased.

An examination of the deceased's body by a physician revealed three gun shot wounds; two in the right abdomen and the third in the left buttock which entered from the back. The physician further testified that death resulted from the two gun shot wounds in the abdomen.

The appellant insists that the trial court erred in refusing to charge the jury on the law of justifiable homicide to prevent robbery, self-defense, and defense of another. The state takes the position that the refusal to so charge was not error because the evidence does not raise any of these issues.

No weapons were exhibited by the deceased at any time and none were found on his body or at the scene.

Appellant did not testify but called his brother Robert and several other witnesses. Robert's testimony shows that he owned the .22 pistol and had it with him during the morning dice game when the deceased took $5 of his money and when he pulled his pistol and demanded his money the proprietor gave him $4.90 and he left. Robert and appellant returned that afternoon and engaged in another dice game, and Robert had several dollars in his hand when the deceased entered the room with a paper bag in his hand and began cursing him, and told him that he had thought about the money the proprietor had given him and he had come back to take it, and put the paper bag in his pocket and grabbed him. At this point appellant told the deceased that if Robert owes you $5 he (appellant) would pay it, but Robert then said that he did not owe him any money. While the deceased was forcing him outside, Robert's pistol began to slip from him and the appellant took it. While Robert and the deceased exchanged blows, Robert placed the money in his left coat pocket which the deceased tore off, but Robert did not see the money fall out.

Robert further testified that the appellant had the pistol and was present while he and the deceased had been "scuffling" for twelve or fifteen minutes. In answer to his counsel's questions about what happened after they got through scuffling, he stated that after "we shook loose" the deceased was standing about 16 or 20 feet away and then started back toward him when the appellant said to the deceased: " 'Why don't you go ahead on. Don't no one want to hurt you.' " He further testified that the deceased, while advancing, made a motion for his right hip pocket and then he heard three rapid shots; and the appellant, who was standing about 2 feet to his right, and the deceased were facing each other but the deceased never got closer than "twenty or sixteen feet," and after the shots were fired, he and the appellant walked away.

Appellant's witness, C. J. Crawford, testified that he saw the deceased and Robert scuffling as he entered a cafe, heard a lady say "don't shoot," then heard a shot and when he returned to the street he saw the deceased running with his back to the man with the pistol who shot twice more at the deceased. He further testified that he did not see the deceased put his hand in Robert's pocket or rip the pocket off, and did not see any pistol on or near the deceased.

A. S. LaMothe, called by appellant, testified that the deceased and the appellant were wrestling over a gun when he first saw them, and the deceased was trying to hold the arm of the hand in which appellant had the gun; that they were about eighteen inches apart at the time of the first shot and on the second shot the deceased turned loose and ran; and he did not see the deceased with any weapon.

The evidence fails to raise the issue that when he shot the deceased, appellant believed himself or anyone present to be in danger of death or serious bodily injury at the hands of the deceased, or that appellant shot the deceased because of any robbery. Therefore, the failure to give the requested charge was not error.

The evidence is sufficient to support the conviction and no error appearing, the judgment is affirmed.

Opinion approved by the Court.