Joe Stanley MORGAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 52442.

Court of Criminal Appeals of Texas.

Jan. 19, 1977.

Clyde W. Woody and Leonard M. Roth, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, Alvin M. Titus, R. P. Cornelius, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

This is an appeal from a conviction for attempted voluntary manslaughter. Appellant was tried before a jury which assessed punishment at ten years in the Texas Department of Corrections and a fine of $5000.

In order to properly dispose of appellant's two grounds of error, a brief statement of the facts will be necessary. The record reflects that the complaining witness, Lynn Snider, and his companion, Bobby Metcalf, arrived at the Sand Pit Lounge near Houston at about 7:30 p. m. on March 30, 1974. Mrs. Mozelle Stockley was the manager of the lounge that night and Metcalf testified that after he and Snider arrived they were served a beer and engaged in a conversation with Mrs. Stockley. Metcalf said that they had heard that Mrs. Stockley was going to be married and they asked her who she was going to marry. She introduced them to two other men, Joe and Bill, and indicated that she was going to marry one or the other of them. The man identified as Joe was later shown to be appellant. Metcalf stated that he and Snider played a game of pool and then ordered another beer to take with them. They left at approximately the same time as appellant and his companion. Metcalf said that as they left appellant asked them if "everything was straight" and that Snider replied affirmatively. Metcalf said he and Snider each got into his own pickup truck and saw appellant and his companion get into another car. They said that appellant's companion, later identified as Bill Bailey, removed a shotgun from the trunk of the car, pumped it once, waved it around in the air and then put it in the back of the car. Appellant and Bailey then left and Metcalf and Snider returned to the interior of the bar to purchase a pack of cigarettes. Metcalf testified that they again spoke briefly with Mrs. Stockley and then stepped onto the front porch of the lounge to leave when they saw appellant and Bailey drive into the parking lot. Metcalf said that appellant got out of the car and came toward him and that Bailey got out of the car and pulled the shotgun out and aimed it at him and Snider. He further said that appellant then threw a beer glass or bottle at them which crashed against the front door of the lounge. Metcalf stated that Mrs. Stockley was not on the porch with them at the time but stayed inside the lounge and closed the door. Both Snider and Metcalf said that appellant then approached them and challenged them to come down into the parking lot. Metcalf said he suggested to Bailey that he put the shotgun away and that he replied, "I'm not putting the shotgun up and if you move I'm going to blow your f___ legs off." Metcalf said that appellant then pulled a knife and grabbed him by the shirt and slashed at him cutting his shirt sleeve. He said that he pulled back and appellant then turned on Snider, grabbing him by the shirt and stabbing him once in the abdomen and once in the chest inflicting serious wounds to the intestine and heart. He said appellant and Bailey then got into their car and left and he helped Snider back into the lounge where he ordered someone to summon an ambulance.

Mrs. Stockley testified to a similar sequence of events, except she indicated that Snider was intoxicated and was shouting in the lounge and making derisive comments about her proposed marriage to "Joe." Mrs. Stockley testified that Joe, appellant, was in fact her brother and that she told Metcalf and Snider she was going to marry him because she thought it would keep Snider from bothering her and causing "static." She stated that at one point during the evening as they were all playing pool Snider grabbed her around the neck and placed a hand on her breast. She further stated that appellant and Bailey left and Snider and Metcalf left just behind them and then returned and Snider made the remark to her that he did not know "who that son-of-a-bitch is you are fixing to marry, but, he has got a good ass whipping coming." She said that she asked them to leave and when they got to the front door of the lounge Snider grabbed her by the arm and pulled her onto the front porch. She stated that appellant ordered Snider to leave her alone and then the fight broke out. It was developed on cross-examination that she refused to tell the police who appellant was or what had transpired. Appellant testified in his own behalf and related a similar sequence of events. He stated that he intended to protect his sister from Snider because he thought Snider was giving her a "hard time."

In his first ground of error appellant contends that the trial court erred in failing to charge the jury on defense of third parties as requested in appellant's special requested charge. The court charged the jury on the law of attempted murder, attempted voluntary manslaughter, aggravated assault and self-defense. Appellant maintains that the evidence shows he was acting with the intent to protect his sister from harm and he is, therefore, entitled to a charge on defense of a third person.

V.T.C.A. Penal Code, Sec. 9.31, Self-Defense, in Subsection (a) provides:

"Except as provided in Subsection (b) of this section, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force."

V.T.C.A. Penal Code, Sec. 9.32, Deadly Force in Defense of Person, reads:

"A person is justified in using deadly force against another:

"(1) if he would be justified in using force against the other under Section 9.31 of this Code;

"(2) if a reasonable person in the actor's situation would not have retreated; and

"(3) when and to the degree he reasonably believes the deadly force is immediately necessary:

"(A) to protect himself against the other's use of or attempted use of unlawful deadly force; or

"(B) to prevent the other's imminent commission of aggravated kidnapping, murder, rape, aggravated rape, robbery, or aggravated robbery."

V.T.C.A. Penal Code, Sec. 9.33, Defense of Third Person, provides that:

"A person is justified in using force or deadly force against another to protect a third person if:

"(1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under Section 9.31 or 9.32 of this Code in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

"(2) the actor reasonably believes that his intervention is immediately necessary to protect the third person."

In the instant case appellant inflicted serious stab wounds on Snider which, according to the treating physician's testimony, could have resulted in Snider's death. Under the requirements of the penal code as set out above, such a use of deadly force would be justified only if the circumstances, *as they appeared to appellant,* led him to a reasonable belief that such action was *im-*

*mediately* necessary to protect his sister. If the evidence supports such a reasonable belief on the appellant's part, then he would be entitled to the special requested charge on defense of a third person. See *Daniels v. State*, 152 Tex.Cr.R. 486, 215 S.W.2d 624 (1948).

We note that there is a conflict in the testimony concerning the fight. Metcalf and Snider both testified that Mrs. Stockley was inside the lounge and had closed the door when appellant approached them and hurled the beer bottle at them. They both testified that they were unarmed and that appellant's companion held the shotgun on them during the attack. Both men stated that while Snider did speak with Mrs. Stockley, he never grabbed her or assaulted her in any way. Mrs. Stockley, on the other hand, stated that Snider did grab her around the neck and touched her breast and that he later grabbed her and pulled her out the front door onto the porch. She also stated that Snider had a beer bottle in his hand at the time of the fight. Most important, however, are the circumstances as perceived by the appellant. He testified that Snider had been giving his sister "static" during the evening and that he and Bailey returned to the lounge because he was afraid Snider and Metcalf had gone back to give his sister "a hard time." He stated that he saw appellant grab his sister at the front door and that he put his arm around her neck and had a beer bottle in his hand. He said that he ordered Snider to leave her alone and then hurled the bottle at him. He further stated that he met Snider at the bottom of the steps to the porch and that Snider was still holding a bottle, so he pulled his pocket knife and stabbed him. On direct examination the following colloquy took place between appellant and his counsel:

"Q (By Mr. Robinson, defense counsel): Well, what did it appear to when you saw your sister being, shall we say, manhandled there by this man?

"A From where I was at I couldn't tell whether he was hitting her with the bottle or what was going on.

"Q Then did you decide to take immediate action?

"A Yes, sir, I did."

Later, on cross-examination, the appellant testified as follows:

"Q (By the State's attorney): Now, when (Snider) started coming down the steps there, as you put it, were you in fear of your life?

"A Yes, sir, I was.

"Q What did you think (he) was going to do?

"A Hit me with the beer bottle.

\* \* \* \* \* \*

"Q Now, at the time he started to walk down the steps and you started to walk to the steps, your sister was back in the club, wasn't she? He had thrown her back in the door?

"A Right.

"Q He wasn't even looking at her, was he?

"A When I hollered at him, no.

"Q So surely, by the time you stabbed him your sister wasn't in any danger at all. She was back inside the club and he was at the bottom of the steps?

"A She wasn't in danger then, no, I was.

"Q So when you stabbed him, it's your testimony that your sister was in no danger at all?

"A She was previously, yes.

"Q But at the time that you stabbed him she wasn't in any danger?

"A No, she wasn't, no.

"Q And the only danger that you were in was you were afraid that he might hit you over the head with a beer bottle and it might cut you?

"A This is true."

As set out above, the facts and circumstances must be judged from the viewpoint of the appellant. V.T.C.A. Penal Code, Sec. 9.33; see *Jones v. State*, 544 S.W.2d 139 (Tex.Cr.App., No. 52,079, decided December 8, 1976) and *Baldridge and Baugh v. State*, 543 S.W.2d 639 (Tex.Cr.App., decided De-

cember 1, 1976). While the appellant's testimony clearly raises the issue of self-defense, we think it is also shown that any alleged danger to Mrs. Stockley had passed and that appellant could no longer have had the reasonable belief that his intervention was "immediately necessary" to protect his sister.

The situation is somewhat similar to *Williams v. State*, 170 Tex.Cr.R. 599, 343 S.W.2d 266 (1961), in which the accused, his brother Robert, and the deceased were in disagreement about five dollars from a dice game. Robert and the deceased were engaged in a scuffle over the money and the accused pulled a pistol and waved it in the air and told his brother to step back. When Robert moved back from the deceased, a bystander told the accused not to shoot and the accused told him to be quiet or he would be shot. The accused then shot the deceased. This Court held that the accused was not entitled to a charge on the law of justifiable homicide to prevent robbery, self-defense or defense of another, stating,

"The evidence fails to raise the issue that when he shot the deceased, appellant believed himself or anyone present to be in danger of death or serious bodily injury at the hands of the deceased . . ."

In the earlier case of *Conn v. State*, 143 Tex.Cr.R. 367, 158 S.W.2d 503 (1942) it was shown that the deceased had grabbed his wife by the arm and when she tried to get away, he tore her dress. However, this Court held that the accused was not entitled to a charge on defense of a third person because there was

"no other hostile act or demonstration on the part of the deceased toward the wife . . . which would indicate that the deceased was making an attack upon his wife which would reasonably create in the mind of the appellant an apprehension that the deceased was about to inflict death or serious bodily injury upon her . . ."

In the instant case, the evidence raises the issue of self-defense and the court properly instructed the jury on that issue. However, by appellant's own testimony, there was no danger to his sister which would raise the issue of defense of a third person and the trial court did not err in failing to charge the jury on that issue.

Appellant's first ground of error is overruled.

In his second ground of error appellant complains of several instances of allegedly improper jury argument. This ground of error is multifarious and not in compliance with Article 40.09, Vernon's Ann.C.C.P. *Livingston v. State*, 542 S.W.2d 655 (Tex.Cr.App.1976); *Rodriquez v. State*, 530 S.W.2d 944 (Tex.Cr.App.1975). We have reviewed the prosecutor's argument in its entirety and find that in eight instances cited by the appellant as allegedly improper argument no objection was made and in one other instance the objection was sustained and appellant requested no further relief. See *Smith v. State*, 541 S.W.2d 841 (Tex.Cr. App.1976) and *Greer v. State*, 523 S.W.2d 687 (Tex.Cr.App.1975). The final instance of allegedly improper argument involved a statement that Mrs. Stockley should have called the police if Snider was creating a disturbance. Appellant objected on the basis that the evidence showed that Mrs. Stockley had called the police. Appellant's objection was overruled. The evidence shows that Mrs. Stockley did summon the police after the stabbing and the prosecutor's remark concerned her failure to summon them before the stabbing when Snider allegedly created a disturbance in the lounge. The trial court did not err in overruling appellant's objection.

Appellant's second ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.