Thomas Chester **BROWN** aka Thomas La Brae, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 62421.

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 22, 1982.

Rehearing Denied Oct. 27, 1982.

276

Robert A. Skipworth, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Lane C. Reedman, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W.C. DAVIS and TEAGUE, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of theft of personal property of a value of more than $200 and less than $10,000. The punishment, enhanced by two prior felony convictions, is imprisonment for life.

The appellant was charged under V.T.C.A. Penal Code, Section 31.09 with theft of several items of personal property from Judith Middagh and with theft of several items of personal property from Jack Millen; both thefts occurring on September 22, 1977, in one scheme and continuing course of conduct; the aggregate value of the property is alleged to be more than $200 and less than $10,000. Appellant raises numerous grounds of error, none of which present reversible error.

The appellant asserts that:

(1) The property is not sufficiently described in the indictment;

(2) the indictment is fatally defective because it "aggregates two distinct crimes";

(3) it was error to allow aggregation of the offenses after he filed a motion to sever;

(4) the evidence is insufficient to support a verdict;

(5) the trial court failed to instruct the jury that a witness was an accomplice witness as a matter of law;

(6) the trial court improperly overruled his objection to a leading question propounded by the prosecutor;

(7) hearsay testimony was improperly admitted;

(8) evidence of an extraneous offense was improperly admitted;

(9) the prosecutor made improper jury argument;

(10) life imprisonment under the facts here is cruel and unusual punishment.

■ The appellant argues that the trial court erred in failing to quash the indictment. He asserts that the description of the property taken is insufficient. See Article 21.09, V.A.C.C.P. The indictment described the property as follows:

"... one (1) Singer Sewing Machine of the value of $150.00, one (1) Texas Instruments Calculator of the value of $30.00, and one (1) hair blower of the value of $20.00 ....

" ....

"one (1) red tool box of the value of $30.00, and one (1) Craftsman chain saw of the value of $115.00 ...."

The descriptions were sufficient. *Welch v. State,* 543 S.W.2d 378 (Tex.Cr.App.1976).

■ The appellant argues that the indictment is fundamentally defective because it aggregates two distinct crimes. We conclude that the indictment sufficiently alleged the offense. *Tucker v. State,* 556 S.W.2d 823 (Tex.Cr.App.1977). The evidence as outlined later demonstrates that the property was stolen pursuant to a single scheme or continuing course of conduct. The ground of error is overruled.

■ In two grounds of error the appellant argues that it was error to allow the aggregation of the offenses after the appellant had filed a motion to sever.

V.T.C.A. Penal Code, Section 31.09, states:

"When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of offense."

Also, see V.T.C.A. Penal Code, Section 3.02(a) and Article 21.24(a), V.A.C.C.P. However, V.T.C.A. Penal Code, Section 3.04(a) provides:

"Whenever two or more offenses have been consolidated or joined for trial under Section 3.02 of this code, the defendant shall have a right to severance of the offense."

The appellant argues that he was entitled to a severance because Section 3.04(a) is mandatory. See *Overton v. State,* 552 S.W.2d 849 (Tex.Cr.App.1977). However, the contention raised by appellant has already been decided adversely to his contention. Section 31.09, supra, creates one offense which cannot be severed. *Wages v. State,* 573 S.W.2d 804 (Tex.Cr.App.1978); *Ex parte Wilson,* 577 S.W.2d 739 (Tex.Cr. App.1979). No right to sever existed; the grounds of error are overruled.

The appellant contends the evidence is insufficient to support the verdict.

■ Benito Martinez testified he worked with the appellant as a yardman for Jack Millen. The appellant was a foreman for Millen's business. Martinez stated that the appellant picked him up early on the morning of September 22, 1977. They drove to Millen's residence where they picked up various tools and equipment used in their yard work including a Craftsman chain saw. The appellant was driving Millen's truck which contained a red tool box. After breakfast and a few errands the pair went to the residence of Judith Middagh. They both entered the house; a key had been left for them so they could gain access to an electric outlet. While Martinez waited in the dining room the appellant went into the bedrooms. He brought out a suitcase and a sewing machine. Martinez stated he believed the calculator was in the suitcase and saw the calculator later.

After this the appellant left Martinez at a restaurant for thirty minutes. When he returned Millen's red tool box was gone and appellant said "he had called him because

he had no money to pay for parking ...." The pair then went to Juarez where the appellant sold the chain saw and the sewing machine. Martinez was taken home afterwards.

Officer Majos testified that on the night of September 22, he investigated an accident report. He found the appellant highly intoxicated, behind the wheel of Millen's truck. The vehicle was impounded and while an inventory of property was taken a hair dryer and a calculator were found. Middagh testified that she recovered her calculator and hair dryer from the truck. Both Millen and Middagh testified that they did not consent to the taking and disposition of their property.

The evidence is sufficient to show that the appellant appropriated all the alleged property without Millen's or Middagh's effective consent and with the intent to deprive them of that property.

■ The appellant also complains that the evidence is insufficient to establish that the property stolen had a value of $200 or more. Millen testified that the chain saw was three months old and he purchased it for $115. The tool box was three years old and was purchased for $30. Middagh testified that the hair dryer was less than a year old and was purchased for about $20. She stated it was worth about $15. She stated she purchased the calculator for $30. The sewing machine was three years old and she paid $150. She later said that she thought the replacement value was about $100. The appellant offered no objection to the manner of proof of value. We have repeatedly stated that if the manner of proving value does not meet the accused's approval, it is incumbent upon him to voice his objection at the time of the introduction of the testimony. *Bullard v. State*, 533 S.W.2d 812 (Tex.Cr.App.1976); *Nitcholas v. State*, 524 S.W.2d 689 (Tex.Cr.App.1975); *Turner v. State*, 486 S.W.2d 797 (Tex.Cr.App.1972). We conclude that the evidence is sufficient to show that the stolen items had a combined value of more than $200.

■ The appellant argues that the trial court erred when it failed to instruct the jury that Benito Martinez was an accomplice witness as a matter of law. The trial court submitted the issue of whether Martinez was an accomplice witness as a question of fact for the jury to decide. If there is a doubt as to whether a witness is an accomplice, submitting the issue to the jury is sufficient even though the evidence seems to preponderate in favor of the conclusion that the witness is an accomplice as a matter of law. *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979). In the case at bar Martinez testified that he was unaware that the appellant was stealing the property. He stated he thought the property belonged to the appellant. He was paid his usual wage of $20 and appellant gave him a suitcase. Martinez reported the incident to Millen the next day.

■ Mere presence at the scene of a crime is insufficient to make a witness an accomplice. *Russell v. State*, 598 S.W.2d 238 (Tex.Cr.App.1980), cert. denied 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980). Nor is a person deemed an accomplice witness because he knew of the crime but failed to disclose it or even concealed it. *Easter v. State*, 536 S.W.2d 223 (Tex.Cr. App.1976). The trial court did not err in submitting the issue of whether Martinez was an accomplice witness as a fact question for the jury. *Carrillo v. State*, supra.

■ The appellant contends that the trial court erred when it overruled his objection to a leading question. On redirect examination of Mr. Martinez the prosecutor asked the following question:

"Did you see Mr. LaBrae remove any jewelry or any items of jewelry-type items from that house?"

As the appellant correctly states, this Court will rarely reverse a conviction because of a leading question. *Calverley v. State*, 511 S.W.2d 60 (Tex.Cr.App.1974). In the present case the witness had a limited command of the English language and all questioning was through an interpreter. The record reveals that both parties had difficulty communicating with the witness. In

light of this we conclude no reversible error occurred.

The appellant next argues that inadmissible hearsay testimony was improperly admitted. Mr. Millen testified that he was called by Mr. Martinez the day after the offense. Mr. Millen, over appellant's objection, testified that Mr. Martinez informed him about the circumstances surrounding the theft. The State concedes that the testimony concerning the contents of the telephone conversation was hearsay. However, Mr. Martinez testified earlier that he called Mr. Millen and told him everything that had happened concerning the theft. The evidence was already before the jury; the ground of error is overruled. *Anderson v. State*, 504 S.W.2d 508 (Tex.Cr. App.1974).

The appellant next asserts that evidence of an extraneous offense was improperly admitted. Mr. Millen, one of the complainants, testified that the appellant did not return money he was to have collected on the day before and the day of the offense. After a few other questions the appellant objected complaining, "You're going to let him go into some checks?" Mr. Martinez had earlier testified, without objection, that the appellant had picked up checks for Mr. Millen on the day of the offense. After appellant's objection was overruled Mr. Millen testified about the apparent misappropriation of funds given to the appellant for Millen's business during the week prior to the offense. No objection to this testimony was ever made. Nothing is presented for review. *Garcia v. State*, 573 S.W.2d 12 (Tex.Cr.App.1978); *Haynes v. State*, 627 S.W.2d 710 (Tex.Cr.App.1982).

The appellant contends that the prosecution engaged in several instances of improper jury argument during the guilt-innocence phase of the trial. The ground of error is multifarious and presents nothing for review. *Morgan v. State*, 545 S.W.2d 811 (Tex.Cr.App.1977). Nonetheless, we have reviewed the argument and conclude that no reversible error occurred. The appellant complains the prosecutor made references to items stolen which were not alleged in the indictment. The prosecutor was in fact informing the jury that they could not use the non-alleged stolen property to reach the two hundred dollar property value of V.T.C.A. Penal Code, Section 31.-03(d)(4). The argument was proper.

The appellant also complains of the following argument:

"I am not going to jump up and interrupt him [appellant's counsel] unless it is something so highly prejudicial that I feel that it is necessary to stop him. That's by way of warning. I am going to give him the opportunity to argue to you anything he wants because you have to make a decision based on this evidence ...."

The prosecutor was explaining why he might have to object to appellant's closing argument and was also explaining that the arguments made by either side were not evidence. The ground of error is overruled.

The appellant contends that based upon the facts of this case the sentence of imprisonment for life is cruel and unusual punishment. Appellant's contention has been rejected. *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). The ground of error is overruled.

The appellant has also filed a pro se brief. After a careful review of the contentions we conclude they are without merit.

The judgment is affirmed.

TEAGUE, Judge, dissenting.

The evidence is legally insufficient to support the jury's finding that the appellant committed the multiple thefts pursuant to one scheme or continuing course of conduct. To the holding of the majority that it is, I respectfully dissent.

Because of the unique facts of this cause, the majority should, but does not, construe the statutory phrase "pursuant to one scheme or continuing course of conduct", which phrase is set out in V.T.C.A., Penal Code, Sec. 31.09. I find from the few cases appealed to this Court which have concerned the application of Sec. 31.09, supra, that this Court has not given the bench and

bar of this State a legal interpretation and construction of the entire phrase "pursuant to one scheme or continuing course of conduct". See *Tucker v. State,* 556 S.W.2d 823 (Tex.Cr.App.1977); *Wages v. State,* 573 S.W.2d 804 (Tex.Cr.App.1978); *Chance v. State,* 579 S.W.2d 471 (Tex.Cr.App.1979);[1] *Turner v. State,* 636 S.W.2d 189 (Tex.Cr.App.1982). Cf. *Oliver v. State,* 613 S.W.2d 270 (Tex.Cr.App.1981).[2] Today, however, because of the unique factual situation of this cause, the majority of this panel is squarely faced with construing the entire phrase "pursuant to one scheme or continuing course of conduct", but it fails to do so. I agree with the majority that the evidence shows that the appellant committed multiple misdemeanor thefts. However, merely stating that appellant committed multiple misdemeanor thefts on the same day does not answer the following question: Are the facts that were presented in this cause legally sufficient to have warranted the jury to conclude that the multiple thefts occurred either pursuant to one scheme or pursuant to a continuing course of conduct? As noted, I find the facts are legally insufficient to warrant the finding that the multiple thefts occurred either pursuant to one scheme or pursuant to a continuing course of conduct.

V.T.C.A., Penal Code, Sec. 31.09, provides as follows:

> When *amounts* are obtained in violation of this chapter *pursuant to one scheme* or *continuing course of conduct,* whether from the same or several sources, the conduct may be considered as *one offense* and the amounts aggregated in determining the grade of the offense. [Emphasis Added]

The State in this cause, for jurisdictional purposes, alleged in the indictment that the appellant had, pursuant to one scheme and continuing course of conduct, committed multiple misdemeanor thefts and that the aggregate value of the items stolen exceeded $200. By the majority opinion, the total value amount of the items stolen was approximately $290.00. The trial court first instructed the jury that before it could find the appellant guilty of committing a felony offense it had to find that the appellant committed the alleged misdemeanor thefts, cf. *Turner v. State,* 636 S.W.2d 189 (Tex.Cr.App.1982), and thereafter instructed the jury in the application of the accusation paragraph of the charge that before it could find appellant guilty of committing a felony offense it had to find that the appropriation of the items of personal property "were obtained persuant [sic] to one scheme or continuing course of conduct."

The phrase "in the continuing course of conduct" has been regularly defined by courts to mean more than an isolated instance. "It is a pattern of conduct composed of the *same* or *similar acts repeated over a period of time,* however short, which establishes continuity of purpose in the mind of the actor." [Emphasis Added]. "To come within the classification of 'course of conduct' it must be shown that such conduct is a continuous practice as to constitute a regular course of conduct and an occasional instance does not establish such custom." *People v. Hotchkiss,* 300 N.Y.S.2d 405, 406, 59 Misc.2d 823 (Schuyler County Court N.Y.1969). See also *Kopf v. Florida Real Estate Commission,* 379 So.2d 1327, 1328 (D.Ct.App., Third Division, Fla.1980); *Warkentin v. Kleinwachter,* 27 P.2d 160, 166 Okl. 218 (Okl.Sup.Ct.1933).

1. Because of the conclusions I have reached concerning the meaning of the phrases "one scheme" and "continuing course of conduct", I believe that this Court erred in *Chance,* Id., when it implicitly held that merely because the facts show that a defendant committed multiple thefts on the same day that this alone is sufficient to authorize invoking the provisions of Sec. 31.09, supra. By the express and clear wording of Sec. 31.09, supra, it is only "When amounts are obtained ... pursuant to one scheme or continuing course of conduct" that

the amounts obtained may be aggregated. In sum, for the State to invoke Sec. 31.09, *Id.,* it must show more than the fact that the defendant is a thief.

2. By the facts as set out in *Oliver,* Id., the defendant stole two pistols from separate stores "on the same day, near the same hour and within a block or so of each other." This, unquestionably, sufficiently shows that the two offenses occurred during "a continuing course of conduct". See *post.*

The word "scheme", as used in the statutory phrase, "appropriation of items of personal property ... pursuant to one scheme," and in the context of the charging instrument in this cause, refers to a plot, plan, or system to commit the multiple misdemeanor offenses. The word "scheme", by its usual and ordinary meaning, involves some connotation of planning and pattern or modus operandi. *Fabian v. United States,* 358 F.2d 187, 193 (Eighth Cir.1966). It means a plan of something to be done, a project, a plot or device for the accomplishment of an object, or a combination of various things according to a systematic plan. *Jeronimo v. Murff,* 157 F.Supp. 808, 815 (U.S.D.Ct.N.Y.1957). By the plain wording of the statute, the value of multiple misdemeanor thefts may be aggregated to the level of a third degree felony if the State alleges and proves that the appropriation of the items of personal property were obtained pursuant to one scheme and the items of property exceeded $200 in value. However, if the prosecution alleges that the appropriation occurred "pursuant to one scheme", then it must prove that a design or plan was formed by the defendant to accomplish the purpose of appropriating the items of personal property. *Moore v. State,* 531 S.W.2d 140, 142 (Tex.Cr.App.1975); *Seiffert v. State,* 501 S.W.2d 124 (Tex.Cr. App.1973). See also *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

By using the above definitions for the word "scheme", and applying them to the facts of this cause, I believe it is improbable to infer that the appellant, when he committed the multiple misdemeanor thefts, did so pursuant to "one scheme". However,

because Sec. 31.09, supra, provides for an alternative method, "pursuant to a continuing course of conduct", of permitting the State to aggregate the amounts obtained, it is necessary to address the following question: Were the items of personal property appropriated during a continuing course of conduct?

Appellant did not testify in this cause. The State's evidence is centered upon the testimony of Benito Martinez, who was on the day in question appellant's fellow employee. On the day in question, the appellant and Martinez were assigned to do yard work at the residence of one of the complaining witnesses, Ms. Middagh, a regular customer of the other complaining witness, Mr. Millen, the employer of appellant and Martinez. In addition to going to Middagh's residence, the evidence reveals that appellant and Martinez engaged in "frolic and detour"[3] on the day in question. First, they went to Middagh's residence where appellant unlawfully took from inside the residence a suitcase, inside of which was a calculator, a set of electric rollers, a sewing machine, a hair dryer, jewelry, a $20 bill, and a $16 check. Without doing any yard work at the premises, appellant and Martinez then left Middagh's residence. Appellant took Martinez to a restaurant where he left Martinez for approximately 30 minutes. When appellant later picked up Martinez at the restaurant, a red tool box, which belonged to Millen, and which had been in the truck, was gone. Appellant and Martinez then went to Juarez, State of Chihauhua, Republic of Mexico. In Juarez, Appellant sold to some friends Middagh's sewing machine and a chain saw that belonged to Millen. Thereafter, appellant and Martinez went to a bar in Juarez and drank beer for

---

3. In Vol. 2, Sec. 268, at page 1382, Harper and James, *The Law of Torts,* it is stated:

"The currency of the terms 'frolic' and 'detour' in this connection is generally attributed to the language of Baron Parke in summing up to the jury in *Joel v. Morrison,* 6 Car. & P. 501, 503, 172 Eng.Rep. 1338, 339 (1834) ('The master is only liable where the servant is acting in the course of his employment. If he was going out of his way, against his master's implied commands,

when driving on his master's business, he will make his master liable; but if he was going on a frolic of his own, without being at all on his master's business, the master will not be liable.')

In general, see Y.B. Smith, Frolic and Detour, 23 Colum.L.Rev. 444, 716 (1923); William O. Douglas, Vicarious Liability and Administration of the Risk, 38 Yale L.J. 584 (1929); 1 Restatement of Agency Sections 228–237."

a period of time. Appellant then took Martinez home. Before they parted, appellant gave Martinez Middagh's suitcase and also gave him $20. Appellant thereafter was arrested for driving his vehicle while intoxicated. Middagh's calculator and hair dryer were recovered from the vehicle. The other items that were stolen were unaccounted for. Martinez testified that during the day in question he was unaware appellant had committed multiple thefts from Middagh and Millen. However, he testified he had an idea he was involved in the thefts.[4]

Do the above facts establish that the items of personal property that had belonged to Middagh and Millen were unlawfully appropriated by appellant "pursuant to one scheme or continuing course of conduct?" I find they do not.

In the following discussion, I shall emphasize why there was not in existence any scheme prior to or during the time the thefts occurred, and will discuss why I believe the thefts did not occur pursuant to a continuing course of conduct.

Even with Martinez' testimony, there is no evidence in this case that any scheme ever existed prior to or during the times when appellant committed the multiple misdemeanor thefts. At some point in time in the State of Chihuahua, Republic of Mexico, a scheme to dispose of some of the stolen property probably existed, but such a scheme, if it did exist, would be irrelevant in making the determination of whether a scheme existed at the time appellant unlawfully appropriated the items of personal property. In order for the jury to have correctly answered in the affirmative the question of whether or not the misdemeanor thefts occurred pursuant to "one continuing course of conduct", it was incumbent upon the State to present to the jury legally sufficient evidence to establish that the acts

of appellant were proof that he was acting in accordance to a certain modus operandi when he committed the multiple thefts. However, in this cause, other than the mere showing that the appellant randomly committed several acts, which resulted in him unlawfully appropriating the items of personal property, the State has failed to sufficiently establish any common characteristics in the acts of the appellant in unlawfully appropriating Middagh's and Millen's property. In light of what the word "scheme" and the phrase "continuing course of conduct" are ordinarily considered to mean, see supra, it is apparent to me that the jury, based upon the evidence presented to it, could have found that the appellant committed two separate misdemeanor thefts, but could not have correctly found that the items of personal property were obtained pursuant to one scheme or continuing course of conduct. To give the word and the phrase different meanings than as set out above would result in their being irrationally defined. The manner in which the complete phrase is set out in Sec. 31.09, supra, evidences an intent on the part of the Legislature to provide for a certain classification and punishment for the defendant who has committed multiple thefts in such a fashion as to evidence "a trademark-like quality" in how they were committed. See also the *Practice Commentary* regarding Sec. 31.09, supra; *Collazo v. State*, 623 S.W.2d 647 (Tex.Cr.App.1981). In this cause, we have dissimilar, not similar, acts of the appellant which brought about the commission of the misdemeanor thefts. In the Middagh theft, while lawfully inside the residence of Middagh, appellant appropriated, inter alia, a suitcase, a calculator that was inside the suitcase, and a sewing machine. These acts of appropriation occurred when appellant and Martinez removed themselves, along with Middagh's

---

4. In light of the facts of the case, it is difficult for me to understand why Martinez was not an accomplice witness as a matter of law. See Art. 38.14, V.A.C.C.P. Nevertheless, the jury was instructed that it could not convict appellant unless it first found that Martinez was not an accomplice to the commission of the thefts by the appellant. Because the jury found appellant guilty, it is apparent that the jury did not believe that Martinez was an accomplice when appellant stole the items of property. Based upon this finding, it further negates why appellant was not acting pursuant to a scheme or acting pursuant to a continuing course of conduct when he stole the property.

personal property, from inside of Middagh's residence. See V.T.C.A., Penal Code, Sec. 31.01(5). Appellant's acts inside Middagh's residence and the appropriation of Middagh's personal property represent nothing more than those of a sneak thief. Because the appellant was originally in lawful possession of the items of personal property he subsequently appropriated from Millen, he could not have unlawfully appropriated those items of property until some point in time after he left Middagh's residence. As to the theft of Millen's property, the evidence only shows a misdemeanor theft by an employee, who was at the time of the theft, whenever that occurred, acting in the capacity of a trustee for his employer. Other than the commission of the thefts themselves, no common characteristics are shown to have existed. The majority, however, without delineating what the "scheme" or the "continuing course of conduct" of appellant was, holds that merely because random thefts are shown to have occurred on the same day, by one who acts in the one instance as a sneak thief and in the other as a thief of his employer's property, that this is sufficient to establish either that 1) prior to the thefts, the appellant devised one scheme to steal property belonging to Middagh and Millen or 2) the thefts occurred pursuant to a continuing course of conduct. There is no evidence of a scheme devised by the appellant prior to going to Middagh's residence and there is nothing to show that his acts of stealing from Middagh and Millen represent some form of a regular course of conduct or were duplicitious in nature. If the Legislature of this State had meant for Sec. 31.09, supra, to be applicable to the mere commission of multiple thefts it could have easily said so. Because it did not, and furthermore, because I find that the majority by its holding has implicitly applied a wrongful interpretation to the statutory phrase "pursuant to a scheme or a continuing course of conduct", I respectfully dissent.