Santos CONSTANCIO, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 3–81–118–CR.

Court of Appeals of Texas, Austin.

Oct. 13, 1982.

Rehearing Denied Nov. 10, 1982.

Kevin Thomas O'Hanlon, Feeney, O'Hanlon & Moore, P.C., Austin (court-appointed), for appellant.

Ronald Earle, Dist. Atty., Philip A. Nelson, Jr., Asst. Dist. Atty., Austin, for appellee.

Before PHILLIPS, C.J., and EARL SMITH and BRADY, JJ.

EARL SMITH, Justice.

Santos Constancio, Jr., was indicted for murder and convicted of voluntary manslaughter in a jury trial in the 126th District Court, Travis County. Punishment was assessed at confinement in the Texas Department of Corrections for 10 years.

On appeal, appellant contends the trial court erred in three respects: (1) by failing to charge the jury on the law of defense of third persons; (2) by failing to give instructions to the jury limiting extraneous acts to the purpose for which such evidence was given; and (3) by failing to charge the jury on the defendant's right to respond to apparent danger.

■ As to the failure of the trial court to charge the jury on the law of defense of third persons, we recognize that appellant is entitled to an affirmative instruction on every issue raised by the evidence whether the evidence bearing on such issue is strong, feeble, impeached or controverted. *Campbell v. State,* 614 S.W.2d 443 (Tex.Cr.App. 1981). However, under Tex.Pen.Code Ann. § 9.33(2) (1974), defense of third persons is raised only if:

> ... the actor reasonably believes that his intervention is *immediately* necessary to protect the third person.

Therefore, we must resort to the evidence to determine whether the issue was raised. The evidence shows that appellant and the deceased engaged in three separate confrontations that occurred over a relatively short period of time. Appellant, his mother, his girl friend and others had attended a picnic on the date in question. The group travelled in two cars. On their return from the picnic the two vehicles were headed south in the right lane on North Lamar Street in the City of Austin. The deceased, driving south in the left lane on Lamar, swerved into the right lane in front of the vehicle in which appellant was a passenger, causing the driver of appellant's vehicle to suddenly apply his brakes. A collision was thereby avoided. This resulted in an exchange, verbally and by obscene gestures, between appellant and deceased. Appellant and his companions then proceeded to the 7–11 convenience store located at the intersection of Koenig and North Lamar Streets. They were followed shortly thereafter by the deceased, when the second confrontation occurred on the parking lot of the convenience store.

When the deceased drove up, he started yelling at the defendant, asking defendant "if he wanted some trouble," and telling defendant, "well, hey, come here." Beverly Barron, her son Tommy Good, and the defendant went to deceased's car, stood by the driver's side and engaged in conversation with deceased. Beverly Barron testified that the deceased said he had a gun in the glove compartment and that he would use it. She did not testify that any threats were made to her. According to her, deceased's anger was directed at the defendant. She heard the defendant say to deceased, "if you've got a gun, use it, or else go on." As to this second confrontation, Tommy Good testified that the deceased said he had a gun in the glove box, that he said to the defendant, "hey, Mexican, I'll blow your head off," that he said to Good, "I'll blow your head off, too" and that deceased also said, "I'll blow everybody's head off." However, on cross-examination, he stated that when his party was about to leave the store, the only person the deceased was threatening was the defendant.

Linda Gayle Hannes testified that she could not hear what deceased said, but did relate overhearing a conversation between Beverly and Tommy, when they returned from deceased's car, in which they discussed the deceased's threats to the defendant.

The defendant's version of this second confrontation failed to disclose any threats to anyone but himself. He did testify that he "was concerned about all the people."

The conversation at the car between deceased, defendant, and his companion was brief. The deceased left. Defendant and Tommy went into the store to buy two six packs of beer. Having done so, defendant's party was preparing to leave and were in the process of backing out their cars when deceased reappeared in his car. This time the final confrontation took place, in which defendant stabbed the deceased three times.

It is without contradiction in the record that during the final confrontation, no threats to third parties were made by deceased. It is clear that such confrontation was solely between the deceased and the defendant. There is nothing in the record that would indicate in any way that deceased threatened, attacked, or attempted to attack any third person. Tommy Good, for example, testified that the deceased did not threaten him during this time; he did not testify to any difficulty between himself and deceased on the final confrontation. The defendant's own testimony eliminates any attack or threatened attack on third persons. He conceded that from his point of view, deceased's anger was directed at him. Beverly Barron testified that she was not afraid for her own safety when deceased got out of his car.

On the final confrontation, there is conflict in the testimony concerning where defendant and deceased were located in the parking lot when deceased was stabbed. The only disinterested witness, Fishbeck, testified: that deceased came onto the parking lot, got out of his car, and yelled at the defendant, "get out of that car, you son-of-a-bitch;" that the defendant got out;

that the two walked toward each other; that there was a verbal exchange; that he heard deceased say, "you don't need a knife" or words to that effect; that defendant became the aggressor after he pulled his knife; that the deceased "backed up;" that they got almost to the back of the station wagon when the defendant lunged at deceased and hit deceased in the chest. The deceased ran, defendant then chased deceased's friend behind the store, returned, and stabbed the station wagon tire.

The defendant said that he got out of the car to confront the deceased because he did not want to jeopardize the people with him.

Defendant testified he thought deceased had a gun; that he was worried about the people with him, some of whom might have been in range of the fire if deceased had a weapon. The record is uncontradicted that deceased had no weapon on him, nor was any found in the car he drove.

■ Viewed in the light most favorable to appellant, we hold the testimony does not raise the issue that appellant reasonably believed his intervention was immediately necessary to protect a third person. Appellant's subjective belief that his victim "might" have shot a third party was insufficient to raise the issue. *McDonald v. State,* 597 S.W.2d 365 (Tex.Cr.App.1980); *Brooks v. State,* 548 S.W.2d 680 (Tex.Cr.App.1977); *Pena v. State,* 635 S.W.2d 912 (Tex.App.1982, no pet.).

■ In this case, appellant was one of the primary actors in the confrontation. He did not intervene between the deceased and any third party. Where there is no evidence that the deceased was making an attack or threatening an immediate attack upon a third party but was directed only toward appellant, the issue of defense of third parties is not raised. *Brooks v. State, supra.* The threats made by decedent during the second confrontation were too remote to meet the immediacy requirement of Tex.Pen.Code Ann. § 9.33(2) (1974). *Morgan v. State,* 545 S.W.2d 811 (Tex.Cr.App.1977).

Appellant's contention that the court erred in not submitting defense of a third person or persons is overruled.

■ Ground of error number two complains of the trial judge's failure to grant a limiting instruction on the effect to be given to evidence of certain extraneous offenses committed by appellant. Responding to favorable character testimony, the prosecution elicited four extraneous offenses by asking "have you heard" questions. Such evidence is admissible to test the credibility of the witness. *Brown v. State,* 477 S.W.2d 617 (Tex.Cr.App.1972).

In some cases the failure of the court to give such a limiting instruction has been held to be reversible error. *Williams v. State,* 494 S.W.2d 559 (Tex.Cr.App.1973); *Wiley v. State,* 153 Tex.Cr.R. 370, 220 S.W.2d 172 (1949).

■ Although appellant made lengthy objections to the court's charge, no objection was lodged against the failure of the trial court to submit the requested limiting instruction.

A requested limiting instruction was included among the papers making up the statement of facts in this case. However, after a close examination of the record, we have concluded that there is no evidence that this instruction was ever brought to the attention of or ruled upon by the trial judge. We note that appellant secured no notation refusing this instruction as required by Tex.Code Cr.P.Ann. art. 36.15 (1979), in effect at the time of trial.

It is important to obtain a ruling on requested special charges. This assures the reviewing court that the trial judge was apprised in what respect the defendant regards the charge as defective. Moreover, it affords the court the opportunity to make corrections before reading the charge to the jury. Finally, judicial economy is better served by preventing unnecessary reversals. *Seefurth v. State,* 422 S.W.2d 931 (Tex.Cr.App.1968). Since compliance with articles 36.14 and 36.15 has not been shown, nothing is presented for review. *McGilvery v. State,* 533 S.W.2d 24 (Tex.Cr.App.1976);

*Jones v. State,* 518 S.W.2d 245 (Tex.Cr.App. 1975).

Appellant's third ground of error requires a decision whether the trial court erred in failing to charge the jury on appellant's right to respond to apparent danger. In this connection appellant relies on *Jones v. State,* 544 S.W.2d 139 (Tex.Cr.App.1976). In *Jones,* the Court of Criminal Appeals held that the failure to give an instruction on apparent danger, where such was raised by the evidence, was reversible error.

*Jones v. State, supra,* does not control this case, however. In *Jones* the charge contained affirmative as well as negative instructions applying the law of self defense. The negative paragraph instructed the jury to find against the appellant on his plea of self defense if the jury believed either (1) the deceased was not actually using or attempting to use unlawful deadly force, or (2) that appellant did not reasonably believe the use of deadly force and the degree of force used by him was immediately necessary to protect himself. We note that the offensive "negative paragraph" included in the *Jones* charge was not submitted in this case.

We need not decide whether the evidence in this case was sufficient to raise the issue of apparent danger. In conjunction with appellant's affirmative instruction on self defense, and unlike the *Jones* charge, the court in this case instructed the jury that:

> reasonable belief means a belief that would be held by an ordinary and prudent man in the same circumstances as the defendant.

The Court of Criminal Appeals has held that by defining the term "reasonable belief" as the trial court did, the court instructed the jury that a reasonable apprehension of danger, whether it be actual or apparent, is all that is required before one is entitled to exercise his right of self defense against his adversary. *Valentine v. State,* 587 S.W.2d 399 (Tex.Cr.App.1979).

Accordingly, the trial court did not err in refusing to submit appellant's special requested instruction.

We find no reversible error. The trial court's judgment is affirmed.