Louis LEDET, Appellant,

v.

The STATE of Texas, Appellee.

No. 51172.

Court of Criminal Appeals of Texas.

March 3, 1976.

Peter D. Williamson, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough, Alvin M. Titus and Andy M. Tobias, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

This is an appeal from a conviction for the offense of oral sodomy under the former Penal Code. The jury assessed punishment at nine years in the Texas Department of Corrections.

Initially the appellant challenges the sufficiency of the evidence to sustain the conviction. The testimony will, therefore, be set out in detail.

The complaining witness, Frederick Brown, was six years old at the time of the offense and eight years old at the time he testified in this case. Brown was examined by the trial court and held to be a qualified witness outside the presence of the jury. Art. 38.06, V.A.C.C.P.; 1 McCormick and Ray, Texas Evidence, Section 272, 2nd Ed., 1956; McCormick, Law of Evidence, Sec. 62, 2nd Ed., 1972. On direct examination Brown testified that he lived at 1639 Allen Parkway in Houston with his mother and older brother. He stated that people who don't tell the truth get a whipping and that he would tell the truth.

The State then asked the witness the following:

"Q. Do you know this man sitting over here in the white T-shirt?

"A. No.

"Q. Have you ever saw that man before?

"A. No.

"Q. Did you ever see him close to 1629 Allen Parkway where you live?

Look at him real close. Have you ever seen him close to your house?

"A. (Shaking head.)" [1]

Brown then testified that he knew "DeDe" and that she lived with her mother and father. He then stated that "DeDe's" father was named Freeman. The State then asked:

"Q. Do you know Louis Ledet, was he living there with De De and her mother?

"A. (Shaking head.)

"Q. Was this man living in an apartment close to you on December 23, 1972?

[1] We note that a verbal answer should be elicited from the witness.

"A. No.

"Q. Do you ever remember going upstairs to an apartment with this man?

"A. No.

"Q. You have never seen him before back on December 23, 1972?

"A. (Answer unaudible.)"

Brown then testified that he went to an apartment near his home on the day of the offense to watch T.V. He stated that the T.V. was brought upstairs to the bedroom by a man he called Louis. Brown then stated that the man called Louis ordered him over to the bed where he was lying down and made Brown "suck his thing." Although the testimony is not clear, Louis apparently had a knife held behind his back and another knife in his pocket. Brown then stated that he heard someone he later said was his mother calling and attempting to get into the apartment. Brown testified that "he" went·downstairs and opened the door to his mother. After the apartment door was opened, Brown stated that he ran outside to his mother and told her what had happened.

The record then reflects the following:

"MR. TOBAIS: May the defendant stand for identification purposes, your honor?

"THE COURT: Yes, sir.

(Whereupon the defendant stood up.)

"Q. (MR. TOBAIS): Look at this man. Is this the man you have been talking about?

"A. No.

"Q. Are you sure?"

"A. (Shaking head.)

"Q. Look at him real close. Are you afraid of him?

"A. No."

On cross-examination, Brown testified that the same man who committed this offense had compelled him to perform a similar act once before. He stated that he had told his mother about this prior act and that he had seen the man again. The record then reflects the following:

"Q. If you saw the man again would you know him?

"A. Yes.

"Q. Are you sure?

"A. Yeap.

"Q. And you have never seen this man before, have you?

"A. No.

"Q. Did that man have on any shoes?

"A. No.

"Q. Did he have socks on?

"A. He didn't have any socks on.

"Q. Do you remember what kind of pants he had on, did he. have blue jeans on?

"A. I don't know the kind.

"Q. What color were they, do you know?

"A. No.

"Q. How many times, if you counted them all up how many times did this man make you suck his thing?

"A. Once.

"Q. Just once. Are you sure?

"A. (Shaking head.)

"Q. You are not scared down here, are you?

"A. (Shaking head.)

"Q. Have you ever seen me before other than today, have you ever seen me before?

"A. Yeap."

Brown further testified on cross-examination that after returning home to his mother on the date of the offense he received a whipping. Brown was then asked to describe the man who committed the offense. He stated that the man had a mustache and beard. That his hair was black, that he was bigger than the appellant and skinnier. Brown then testified

that the man who committed the offense was a white male with blue tattoos on his arms. The record reflects that the appellant is a very dark black male.

On re-cross examination Brown testified that there was a second man in the apartment on the night of the offense. Brown stated that this second man had an afro haircut and that he was black. Apparently from the testimony this second man left before the offense was committed.

On re-direct examination, the State asked Brown to identify a picture of the appellant taken at the time of his arrest. The record then reflects the following:

"Q. (Mr. Tobais): Fredrick, let me show you state's exhibit number one and ask you if you recognize him or not, have you seen that man before, is that the Louis you have been telling us about?

"A. No.

"Q. You can not identify state's exhibit number one as the man in the picture, have you seen this man before?

"A. No.

"Q. Never seen him before.

"Pass the witness."

The victim's mother, Clara Brown, testified that on December 23, 1972, she had gone to the airport to pick up her sister and had left Frederick at home with her daughter. She identified appellant as the man who was living next door to her on the date of the offense.

Clara Brown then testified that upon returning home she went to the appellant's apartment and attempted to enter to get her son. She stated that the appellant opened the apartment door. She was then asked to describe her son's appearance as he came out of the apartment. She stated, "Well, he just came out, but I was so mad and upset 'till I just told him to go on to the house and I was asking him what he was doing with my son over here in his house and why he would not let him out."

Over objection, Clara Brown testified that her son told her about the commission of the offense. She stated that she believed the appellant was the man that her son described committing the offense.

In *Allen v. State,* 479 S.W.2d 278 (Tex.Cr. App.1972), this Court held that the testimony of the complaining witness alone was sufficient to support a conviction for sodomy. The fact that a ten year old witness in a sodomy prosecution may have given some contradictory testimony did not render the evidence insufficient in *Dawson v. State,* 472 S.W.2d 775 (Tex.Cr.App.1971); however, the identity of the accused and the details of the offense were in no material way contradicted.

In *Hawkins v. State,* 505 S.W.2d 578 (Tex.Cr.App.1974), the victim was, as in the instant case, six years old at the time of the offense and eight years old at the time of the trial. The victim clearly identified the accused and described the offense. The accused testified and denied the offense. This Court held that the testimony of the six year old victim was sufficient to support the conviction.

The appellant in *McDonald v. State,* 513 S.W.2d 44 (Tex.Cr.App.1974), challenged the sufficiency of the evidence to show that the complaining witness identified him as the perpetrator of the offense. In contrast to the instant cause, the witness identified the accused in open court as the man she called "Buddy."

In *McCullen v. State,* 372 S.W.2d 693 (Tex.Cr.App.1963), the accused was charged with the offense of "enticing a minor to a house for the purpose of proposing to such child the performance of an act of sodomy." This Court reversed the conviction because the State failed to prove that the offense was committed by the accused. This Court stated:

"The State did develop testimony, from the prosecutrix, that the Eastman yard was right next door to where the man lived. The burden is on the State in any

criminal prosecution to prove beyond a reasonable doubt that the accused committed the criminal act charged. *De La Paz v. State,* 161 Tex.Cr.R. 514, 279 S.W.2d 101. As stated by this Court in *Mayo v. State,* 156 Tex.Cr.R. 26, 238 S.W.2d 777: 'The state was under the burden of showing that this appellant was the man who committed the offense charged. Unless and until the state satisfies that burden, the guilt of this appellant has not been shown. *Gandy v. State,* 139 Tex.Cr.R. 140, 139 S.W.2d 275, also supports the holding that the accused must be identified as the person who committed the offense."

As the testimony set out above indicates, this is a case where the complaining witness not only failed to identify the appellant, but repeatedly testified that the appellant was not the man who committed the offense. On the direct evidence of the complaining witness, the conviction cannot be sustained.

The State argues in its brief that this is a circumstantial evidence case and that circumstantially the guilt of the appellant is proven.

The test for determining the sufficiency of the evidence in a circumstantial evidence case was recently set out in *Easley v. State,* 529 S.W.2d 522 (Tex.Cr.App.1975); citing *Indo v. State,* 502 S.W.2d 166 (Tex.Cr.App. 1973), as follows:

" 'This Court has long adhered to the rule that a conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except the guilt of the accused, and proof amounting to only a strong suspicion or mere probability is insufficient. *Flores v. State,* 489 S.W.2d 901, 902 (Tex.Cr.App.1973), and the cases therein cited.' "

There is no more than a strong suspicion in the instant case. The victim stated the appellant was not the man, although circumstances may point to him as the guilty party. Further, there is another reasonable hypothesis: That the offense was committed by a white man with blue tattoos on his arms who was in the apartment at the time of the offense.

It should be noted that after a careful review of the record we are forced to observe that the briefs of both the appellant and the State have described testimony which our own reading of the record does not support.

For the reasons stated, the judgment is reversed and the cause remanded.

Opinion approved by the Court.