Charles Douglas OLIVER, Appellant,

v.

The STATE of Texas, Appellee.

No. 58401.

Court of Criminal Appeals of Texas,
Panel No. 1.

Nov. 14, 1979.

On Rehearing March 25, 1981.

Tom J. Brian, Wichita Falls, for appellant.

Timothy D. Eyssen, Dist. Atty. and Dan Tompkins, Asst. Dist. Atty., Wichita Falls, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and DOUGLAS and W. C. Davis, JJ.

## OPINION

DOUGLAS, Judge.

Appellant was convicted of theft over $200 and less than $10,000. The court assessed punishment, enhanced under V.T.C.A., Penal Code, Section 12.42(d), at life.

The indictment alleged:

"... that Charles Douglas Oliver on or about the 27th day of September A.D., 1975 and anterior to the presentment of this indictment, in the County of Wichita and State of Texas, did then and there unlawfully appropriate property, to-wit: a pistol of the value of $149.95 from Coyle Defoor without the effective consent of the owner, Coyle Defoor, and with intent to deprive the said owner of said property and did appropriate property, to-wit: a pistol of the value of $65.00 from Charles Halovek without the effective consent of the owner, Charles Halovek, and with intent to deprive the said owner of said property and both of said pistols were obtained, as alleged, in one scheme and continuing course of conduct, and the aggregate value of the pistols stolen was more than $200 and less than $10,000."

Charles Halovek, the owner of the sixty-five dollar pistol, testified that appellant came in his store and requested to see one of the pistols. Halovek gave Oliver a .38 caliber pistol. Oliver then suddenly bolted out the door and ran down a neighboring alley. Halovek identified Oliver as the thief.

Coyle Defoor testified that, on the same day, a pistol was taken from him under similar circumstances. When asked about the identity of the robber, Defoor testified:

"Q.  The person that came in that day, had he been in your place of business before?

"A.  Yes, sir.

"Q.  Approximately how many times?

"A.  That's hard to—I couldn't say, but I had known him off and on for about a year.

"Q. And how had you come to know him?

"A. Oh, he had made a loan, I'm sure, in the store, and just looking around, too, and just knowing him as an individual.

"Q. Is that person present in the courtroom today?

"A. I couldn't say.

"Q. Do you remember the description of the individual?

"A. Not really. I wouldn't want to swear on it, and if I may, I'd like to say something."

He then testified, over appellant's objection:

"Q. (Mr. Towery) Okay. Had you, prior to today, made an identification of the individual who took the pistol from your store?

"A. Yes, sir, I did.

"Q. And do you remember the approximate date that that identification was made?

"A. It was right around—right after it or the next day, I'm pretty sure, because I'd say it was either that day or the next day.

"Q. And did you—to whom did you make the identification?

"A. To the investigating officer that was investigating the incident.

"Q. Do you remember his name?

"A. No, sir, I sure don't.

"Q. The identification that you made, did you name an individual?

"A. Yes, sir.

"Q. And did you tell the officer the individual's name who took the pistol from your store?

"A. Yes, sir.

"Q. And what was that name?

"A. Charles Oliver.

"Q. And did you, at a later date, have occasion to identify this person known as—that you knew as Charles Oliver?

"A. Yes, sir.

"Q. And did you, when you identified him at this later date—was he present in the same room in which you were in?

"A. Yes, sir.

"Q. And was it a face-to-face identification?

"A. Yes, sir.

"Q. And at that time were you positive as to the identification being one and the same person as the person who took the pistol from your store?

"A. Yes, sir.

"Q. And do you remember approximately when that was?

"A. No, sir."

On cross-examination, Defoor testified:

"Q. And I believe you also said that you couldn't say for sure that the defendant, who is in this room, was in your store on that day?

"A. That's correct.

"Q. And I believe you've also said that you could not name the person at this time who was in the store on that day?

"A. Do what again?

"Q. I'm sorry, that question wasn't very clear. That you couldn't say that the defendant was in your store and you could not identify the person here, the defendant here, as being the person who was in your store on that day, I believe you said that, didn't you?

"A. I sure did."

In *Barrett v. State*, 547 S.W.2d 604 (Tex. Cr.App.1977), we reversed the defendant's conviction, based on his guilty plea, because of the lack of an affirmative identification of the defendant as the attacker and the lack of evidence connecting the defendant with the crime. In *Ledet v. State*, 533 S.W.2d 817 (Tex.Cr.App.1976), the defendant was charged with oral sodomy. The complaining witness, an eight-year-old boy, was unable to identify the defendant as the sodomist. In spite of testimony from the victim's mother that the boy was found in

the defendant's apartment right after the offense and that the boy told her about the commission of the offense, this Court held the evidence on identification to be insufficient.

The evidence in the case at bar is even less compelling than in *Ledet*. Even though Defoor testified that he identified a Charles Oliver as the robber, he was unable to identify the appellant as the same Charles Oliver. There was no evidence admitted that would connect Oliver with the crime. There was no testimony by an arresting officer that Oliver was found with the stolen guns in his possession, nor was there any evidence by the officer conducting the lineup that Defoor had identified appellant as the robber.

Because it was necessary for the State to consolidate both offenses into a single count in order to prosecute a felony, the evidence is insufficient to support the indictment.

The conviction is reversed and reformed to reflect a judgment of acquittal. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

Before the court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

This is an appeal from a conviction for felony theft, where the punishment was assessed by the court after a verdict of guilty at life imprisonment as a result of two prior felony convictions alleged for enhancement to which the appellant pled "true." See V.T.C.A., Penal Code, § 12.-42(d).

The indictment in alleging the primary offense alleged in part:

"... that Charles Douglas Oliver on or about the 27th day of September A.D., 1975 and anterior to the presentment of this indictment, in the County of Wichita and State of Texas, did then and there unlawfully appropriate property, to-wit: a pistol of the value of $149.95 from Coyle Defoor without the effective consent of the owner, Coyle Defoor, and with intent to deprive the said owner of said property and did appropriate property, to-wit: a pistol of the value of $65.00 from Charles Halovek without the effective consent of the owner, Charles Halovek, and with intent to deprive the said owner of said property and both of said pistols were obtained, as alleged, in one scheme and continuing course of conduct, and the aggregate value of the pistols stolen was more than $200 and less than $10,000."

It is obvious the State alleged the two offenses in the first paragraph of the indictment under V.T.C.A., Penal Code, § 31.-09, in order to elevate two Class A misdemeanor thefts to a third-degree felony. See V.T.C.A., Penal Code, § 31.03(d)(3), (4). The jury having found appellant guilty of the primary felony offense alleged, the court assessed punishment at life in view of appellant's plea of "true" to the two prior felony convictions alleged.

On original submission a panel of this court speaking through Judge Douglas found the evidence insufficient to show that the appellant stole the "Coyle Defoor" pistol as alleged in the first paragraph of the indictment on the basis that Defoor was unable in court to identify the appellant as the thief who took the pistol in question and fled from Defoor's store. The panel concluded, "Because it was necessary for the State to consolidate both offenses into a single count in order to prosecute a felony, the evidence is insufficient to support the indictment." In light of *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), the conviction was reversed and reformed to reflect a judgment of acquittal.

On rehearing the State urges that a Class A misdemeanor theft is a lesser included offense of felony theft, see Article 37.09, V.A.C.C.P., and that a conviction for a lesser included offense may be had where a greater offense is charged. See V.T.C.A., Penal Code, § 37.08, V.A.C.C.P. It argues under any circumstances the evidence was

sufficient to support a conviction for a Class A misdemeanor theft of the "Charles Halovek" pistol and it should not be prohibited from re-trying the appellant for that offense.

We need not reach the State's contention on rehearing as we have determined en banc to re-examine the evidence as to whether Defoor was able to identify the appellant as the man who took the pistol from his store. On direct examination, Coyle Defoor testified:

"Q. Do you know a person named Charles Oliver?

"A. I know the name, right. . . ."

Defoor related a man walked in his store and wanted to look at a specific gun. Defoor handed it to him with another clerk standing there in front of him. Defoor was waiting on another customer when the man ran out of the store and Defoor chased him for half a mile.

The record then reflects:

"Q. The person that came in that day, had he been in your place of business before?

"A. Yes, sir.

"Q. Approximately how many times?

"A. That's hard to—I couldn't say, but I had known him off and on for about a year.

"Q. And how had you come to know him?

"A. Oh, he had made a loan, I'm sure, in the store, and just looking around, too, and just knowing him as an individual.

"Q. Is that person present in the courtroom today?

"A. I couldn't say.

"Q. Do you remember the description of the individual?

"A. Not really. I wouldn't want to swear on it, and if I may, I'd like to say something.

\* \* \* \* \* \*

"Q. . . . you stated that you do not know whether the person that robbed your—or that took the gun from your store is presently in the courtroom today, is that correct?

"A. That's correct.

\* \* \* \* \* \*

"Q. . . . Okay. Had you, prior to today, made an identification of the individual who took the pistol from your store?

"A. Yes, sir, I did."

Defoor then testified the day of the theft or next day he made an identification. The record also shows:

"Q. And did you—to whom did you make the identification?

"A. To the investigating officer that was investigating the incident.

\* \* \* \* \* \*

"Q. The identification that you made, did you name an individual?

"A. Yes, sir.

"Q. And did you tell the officer the individual's name who took the pistol from your store?

"A. Yes, sir.

"Q. And what was that name?

"A. Charles Oliver.

"Q. And did you, at a later date, have occasion to identify this person known as—that you knew as Charles Oliver?

"A. Yes, sir.

"Q. And did you, when you identified him at this later date—was he present in the same room in which you were in?

"A. Yes, sir.

"Q. And was it a face-to-face identification?

"A. Yes, sir.

"Q. And at that time were you positive as to the identification being one and the same person as the person who took the pistol from your store?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. Would you describe, to the best of your recollection, the person that

came into your store that afternoon and took the pistol?

"A. (No response.)

"Q. Well, let me ask you a question, was it a male or female?

"A. It was a male.

"Q. Was the male—was he white, black, Indian, Chicano or would not fall into any of those catagories, to the best of your recollection?

"A. He was black.

"Q. Were you able to ascertain his approximate age?

"A. I would say his middle twenties, say twenty-five.

"Q. Was he exceptionally tall or short?

"A. He was about medium, five foot seven to nine.

"Q. Was he heavy, was he slender? Would you describe his weight?

"A. Probably about one thirty...."

On cross-examination Defoor admitted that several hundred persons in Wichita Falls might meet the description he had given, and he stated he couldn't be sure the defendant in the courtroom was in his store on the day in question. On re-direct examination he explained that this was so because it had been so long between the alleged offense and the trial.

Later Defoor was recalled by the State. He reiterated he had given a description of the individual who had stolen the pistol, and that the appellant was of the same height, weight and general appearance as that person. The record then shows:

"Q. Has there been any—or is there any difference in this defendant's and the defendant's appearance here and the appearance of the individual who took the pistol from your store?

"A. Yes, sir.

"Q. Certain characteristics?

"A. He was unshaven at the time, and his hair was longer.

"Q. All right. Except for the defendant here being clean shaven and his hair longer, are there any other differ-

ences between the person that took the pistol from your store and this defendant?

"A. No, sir...."

In addition to the above the evidence is undisputed that the appellant was in another store about a block away at or about the same time on the same afternoon and there also stole a pistol.

Defoor, who had made previous identifications, explained his inability to make a positive in-court identification upon the length of time from the incident (September 27, 1975) until the time of trial (July 5, 1977) and upon the fact the accused was clean shaven and had shorter hair than the man he had earlier identified as the thief and as Charles Oliver.

■ Evidence as to the identity of a thief may be proven by direct or circumstantial evidence.

■ There were no special requested charges nor objections to the court's charge. See Articles 36.14 and 36.15, V.A.C.C.P. Viewing the evidence in the light most favorable to the jury's verdict, we conclude the evidence was sufficient to show that the appellant was the person who committed the theft of the "Defoor" pistol. With due respect, the panel opinion was in error. We overrule appellant's contention that the evidence was insufficient since the appellant was not identified as the person who took the "Defoor" pistol.

Appellant also argues the evidence is insufficient to prove that the appropriated pistols were of the value of $200.00 or more so as to make the consolidated misdemeanors a felony theft. Defoor testified that he was a gun dealer in Wichita Falls and that the fair market value of the new Smith and Wesson Model 37 pistol taken from his store was between $150.00 and $165.00 on the date in question. Halovek, a gun dealer, testified the new .38 Special snub-nose pistol taken from his store on September 27, 1975 had a fair market value of about $60 to $65. There was some testimony that some dealers might have sold the guns at a

lower price, but also some evidence they could have been sold at a higher price. We reject appellant's contention the evidence did not show a fair market value of $200.00 or more.

Appellant contends the evidence fails to establish beyond a reasonable doubt that the acts alleged in the first paragraph of the indictment were done in one scheme and continuing course of conduct so as to invoke the provisions of V.T.C.A., Penal Code, § 31.09.[1] The two misdemeanor theft offenses here alleged in the first paragraph were shown to be committed on the same day, near the same hour and within a block or so of each other. We reject appellant's contention.

Appellant also contends the jury was guilty of misconduct in going beyond the evidence presented and speculating how he may have been able to commit separate offenses at the same time.

There is no evidence showing any jury misconduct. Apparently appellant has reference to the evidence that report of both thefts reached the Wichita Falls Police Department during the minute of 3:03 p. m. on the afternoon of September 27, 1975. Appellant seems to argue that he could not have been at two places at the same time. The evidence shows that in one case the individual was chased for awhile, and there is no showing as to the exact delay in calling the police in each case. The fact the calls were received during the same minute at the police station does not mean the appellant was at two different places at the same time. There is no showing of jury misconduct. The contention is overruled.

The State's motion is granted. The judgment of reversal is set aside, and the judgment is now affirmed.

ROBERTS and CLINTON, JJ., dissent.

---

1. V.T.C.A., Penal Code, § 31.09, provides:

"When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense."