NO. 07-05-0156-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



MAY 24, 2006


______________________________



PRAXAIR INC., 



 Appellant


v.



STERLING CHEMICALS, INC., 



 Appellee

_________________________________



FROM THE 405TH DISTRICT COURT OF GALVESTON COUNTY;



NO. CV-0060; HON. WAYNE J. MALLIA, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and REAVIS and HANCOCK, JJ. (1)

 This appeal arises from a purported breach by Praxair, Inc. of a guarantee
agreement it executed with Sterling Chemicals, Inc. Upon trial by jury, the trial court
entered judgment awarding Sterling damages against Praxair. The latter appealed and
presented us with seven issues to review. We need only address the sixth for it is
dispositive. Through it, the corporation asserts that it did not guarantee performance or
payment of the obligation upon which the judgment was founded. We agree, sustain the
issue, and reverse the judgment.

 The controversy at bar arises from the alleged failure of Praxair Hydrogen Supply,
Inc. (PHS) to construct piping that complied with a designated standard. According to the
record, PHS and Sterling struck a deal under which the former agreed to build a particular
facility to sell items produced thereat to Sterling. Documents were signed memorializing
the accord. Furthermore, Praxair executed a guarantee assuring the performance and
payment of various duties of PHS. One of many issues below for the jury and trial court
to address involved whether the contractual duty upon which Sterling sued fell within the
scope of the guarantee. Both the trial court and jury said it did. Now we answer the same
question, and do so by concluding that it did not.

 Per §1.1 of the guarantee in question, Praxair obligated itself to:

 unconditionally and irrevocably guarantee . . . to Sterling the full, faithful and
timely performance of all of the obligations of PHS, including the full and
timely payment of any monies required to be paid by PHS under the Agreements (such performance and payment obligations being hereinafter

 collectively referred to herein as the "Obligations"), as and when same shall
become performable or due and payable according to the terms thereof, as
such Agreements may be modified from time to time by the parties.


(Emphasis added). The "Agreements" mentioned are defined in the guarantee. They
consist of a "Ground Lease Agreement, a Product Supply Agreement for the supply of
carbon monoxide, blend gas, hydrogen, and superheated steam, and a Utilities
Agreement." Yet, Sterling tells us that 

 the agreements that were found to have been breached by PHS . . . were not
found in the Ground Lease, the Product Supply Agreement, or the Utilities
Agreement, but were instead consistent prior or contemporaneous
agreements pertaining to the standards, quality, design and construction of
the piping and equipment that was to be installed in [the] gas plant.


Thus, the controversy before us concerns whether these "consistent prior and
contemporaneous agreements" fell within the borders of the guarantee. And, in resolving
the matter we take care to read the guarantee agreement as a whole, see J. M. Davidson,
Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003) (stating that contracts must be read as
a whole), and strictly construe it in favor of the guarantor, i.e. Praxair. See Reece v. First
State Bank of Denton, 566 S.W.2d 296, 297 (Tex. 1978). 

 As previously mentioned, the contract before us relates to Praxair's promise to
guarantee the performance and payment of certain items by PHS. Moreover, these duties
are identified as the "Obligations" which Praxair agreed to perform or pay "as and when
same shall become performable or due and payable according to the terms thereof, as
such Agreements may be modified . . . ." The last phrase is telling. By alluding to
performance and payment in accordance "to the terms thereof, as such Agreements may
be modified", one sees that the terms of performance and payment contemplated are
those defined by the original "Agreements" or their modifications. Simply put, the
obligations imposed upon PHS under the "Agreements" dictate the extent of Praxair's
liability. That this is true is buttressed by other provisions of the contract. 

 For instance, §1.3 of the accord describes Praxair's liability as "primary" and states
that if PHS was to "fail or refuse to perform or pay all or any of the Obligations . . . [the]
Guarantor agrees (i) to complete such performance as required under the Agreements
 . . . ." (Emphasis added). Additionally, under article two wherein the parties discuss the
"term" or duration of the guarantee, it is stated that the "Guaranty shall remain in full force
and effect until all Obligations of PHS under all of the Agreements guaranteed . . . are fully
and faithfully performed . . . ." (Emphasis added). Both provisions say nothing about
promises, contracts, duties, or the like of PHS other than those arising under the
"Agreements." So, we find but one reasonable interpretation of the guarantee, and it
equates the extent of Praxair's obligations as a guarantor to the duties of PHS as
established in the "Agreements." 

 Our having so interpreted the guarantee leads us to but one outcome. This
outcome is mandated by both the contractual definition ascribed by the parties to the word
"Agreements" and the undisputed fact that the contracts purportedly breached by PHS
"were not found in the Ground Lease, the Product Supply Agreement, or the Utilities
Agreement", i.e. the documents comprising the "Agreements." Simply put, the duties
allegedly breached by PHS fell outside the scope of Praxair's guarantee. (2) Thus, and as
a matter of law, it was not liable for their performance or payment. In concluding otherwise,
both the jury and trial court harmfully erred.

 We reverse the judgment of the trial court and render judgment denying Sterling
recovery against Praxair.

 

 Brian Quinn

 Chief Justice


Reavis, S.J., not participating.
1. Don Reavis, Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann.
§75.002(a)(1) (Vernon Supp. 2006). 
2. We are mindful of Sterling's contention that the guarantee should be read as mandating that Praxair
agreed to guarantee "all of the obligations of PHS" and only a portion of them constituted the timely payment
of certain monies. In other words, Sterling posited that in using the word "all" before "obligations" then
followed by the word "including" when alluding to the payment of monies, there must have been other
obligations guaranteed, and those obligations allegedly were no less expansive than any and every liability
of PHS, irrespective of its source. This proposition, however, ignores the references to other provisions of
the document. Again, those provisions are §1.3 and article 2. They, when combined with the complete
wording of §1.1, evince that every obligation to be guaranteed is brought under the umbrella of the word
"Agreements" as expressly defined by the parties. Having to strictly construe the agreement as a whole, we
again are led to the conclusion that the duties imposed by the "Agreements" are the only duties Praxair
guaranteed. 



colloquy following the trial court's ruling in which the State, without
objection, queried Sanchez as to whether it was common to follow up on an investigation
when an individual had been found in possession of a narcotic and that was why he
returned to appellant's house. He also refers to the portions of the State's closing
argument in which the prosecutor argued that this was a simple case because the dope
was in appellant's pocket and the only witnesses testifying to the contrary had the motive
to say something that did not make sense to obtain a different outcome. He then reasons
that the argument, when taken in conjunction with Sanchez' reference to his suspicions,
was a calculated attempt to arouse prejudice in the minds of the jurors in order to convict
appellant on evidence not directed solely to the crime charged.

 We disagree. Viewed in its context, the passing reference to the officer's prior
suspicions was not so prejudicial that the prompt jury instruction to disregard was not
sufficient to remove any reversible taint. This is particularly true in view of the fact that no
other reference to the prior suspicions of the officer was made. Moreover, we do not think
the portions of the State's argument to which appellant referred were more than permissible
references to the State's view of the evidence. Appellant's first issue is overruled.

 As we have noted, in his second issue, appellant questions whether the evidence
is legally and factually sufficient to support the conviction because there was no in-court
identification of him as the one in possession of the controlled substance. In presenting
that argument, he says that the only evidence of identity was presented through jailer Aven,
"who testified solely that Appellant was in the courtroom and was the person brought to jail
the night of January 30, 2003." He then argues appellant was "not located in the courtroom
by Jailer Aven or anyone else, and from the record there is no way to ascertain who Aven
was referring to at the time he answered," and there is no testimony identifying appellant
as the one accused of possessing the contraband on the night in question. Thus, because
this identification was a fundamental element of the State's case, he contends the evidence
is not sufficient to sustain his conviction. Because of this underlying argument, we consider
it sufficient to question both the legal as well as the factual sufficiency of the evidence to
support the conviction. 

 The standards governing our consideration of these contentions are axiomatic. In
reviewing the legal sufficiency of evidence the question is whether, viewing the evidence
in the light most favorable to the jury's verdict, any rational trier of fact could have found all
the essential elements of the offense charged beyond a reasonable doubt. See Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 849 660 (1979). In
considering a factual insufficiency claim, the reviewing court asks whether a neutral review
of the evidence, both for and against the jury verdict, demonstrates that the proof of guilt
is so obviously weak as to undermine confidence in the jury's determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. See
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Identity can be proven either
by direct or circumstantial evidence. Oliver v. State, 613 S.W.2d 270, 274 (Tex. Crim. App.
1979). 

 In supporting his argument, appellant cites United States v. Hawkins, 658 F.2d 279
(5th Cir. 1981) for the proposition that an uncertain in-court identification is insufficient if it
is the only evidence. In considering the applicability of that proposition to this case, we
note that in Hawkins, the court commented that although the witness in question was
"somewhat less than unequivocal," the witness' description of the defendant and his
testimony about the defendant's involvement "were more than sufficient to support the
jury's verdict." Id. at 289. We also note that in cases such as Bickems v. State, 708 S.W.2d
541 (Tex. App.--Dallas 1986, no pet.), the court determined that other evidence, including
the witness' positive identification of that appellant as the culprit, taken together with the
circumstantial evidence that placed him in the area wearing similar clothing to those the
victim had described his assailant as wearing at the time, was sufficient to support the
conviction. Id. at 543.

 In this case, jailer Aven was not only asked if he saw appellant in the courtroom, he
was asked if he was the person brought into jail that night. He also testified that during the
booking-in process at the jail, he and the other jailer took appellant's name, his social
security number, and his date of birth. Additionally, there was the testimony we recited
above about the arrest of appellant, his transportation to the jail, and the reference to the
contraband falling out of his pocket. Under the record, the evidence was amply sufficient,
both legally and factually, to support the verdict of the jury. Appellant's second issue is
overruled.

 In sum, both of appellant's issues are overruled and the judgment of the trial court
is affirmed. 


 John T. Boyd

 Senior Justice 


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004-2005).