

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-15-00059-CR

JAMES WAYNE WALSH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 28,919

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# M E M O R A N D U M   O P I N I O N

James Wayne Walsh was convicted by a Hunt County jury of evading arrest with a motor vehicle,[1] and the trial court, after finding the enhancement allegations to be true, assessed punishment of forty-five years'[2] imprisonment. The jury also found that Walsh had used the motor vehicle as a deadly weapon in the commission of the offense. In this appeal, Walsh asserts that there is insufficient evidence to support (1) his conviction for evading arrest with a motor vehicle and (2) the jury finding that he used a motor vehicle as a deadly weapon. We find that there is sufficient evidence to support both his conviction and the jury finding that he used the motor vehicle as a deadly weapon. We, therefore, affirm the trial court's judgment.

## I.    Background

On February 11, 2013, David Coulson's pickup truck was taken without his permission from the parking lot of his workplace in Whitesboro, Texas. Coulson identified photographs of the truck used to commit the offense charged in this case as being images of his truck. Later that day, Ricky Nelson pulled into the driveway of his place of business on Moulton Street in Greenville and observed the same truck backed up to a utility trailer owned by Nelson. Nelson testified that he saw a man come around the side of the truck, get in the driver's side door and begin to slowly drive away. Nelson testified that he only saw one man in the truck, whom he described as short.[3] Nelson followed the truck as it rapidly sped up when it turned onto Moulton.

---

[1]*See* TEX. PENAL CODE ANN. § 38.04(a), (b)(2)(A) (West Supp. 2014).

[2]Walsh was sentenced as a habitual felony offender. *See* TEX. PENAL CODE ANN. § 12.42(d) (West 2014).

[3]Walsh is five feet, three inches tall.

As he was pulling onto Moulton, Nelson encountered Officer Bobby Wooldridge of the Greenville Police Department. Nelson rolled down his window, pointed out the truck to Wooldridge, and told him that the individual in the truck was trying to steal a trailer.

Wooldridge testified that the truck turned into the Days Inn parking lot and that he followed it and activated his overhead lights. He testified that he saw only one person in the truck. The truck continued through the parking lot, then sped up rapidly as it merged onto the service road of Interstate 30. At that point, Wooldridge activated his siren and pursued the truck. He testified that the truck veered fairly quickly onto the on-ramp to merge onto Interstate 30, crossed a solid white line, and went around an eighteen-wheeler and another vehicle, both of which were also merging onto the interstate. As he followed the truck, it accelerated rapidly to seventy miles per hour on the interstate.[4] In a short distance, the truck exited the interstate through the grass median and onto the service road. Wooldridge continued a little farther, saw the truck turn onto Davis Circle, then exited the interstate himself over the grass median. He testified that he lost sight of the truck when it turned onto Davis Circle. Wooldridge then proceeded slowly down Davis Circle, which dead ends, and stopped at the end of the street.[5]

---

[4]Although Wooldridge testified that the truck went above the speed limit, at this location on Interstate 30, the speed limit was seventy-five miles per hour.

[5]A video recording taken by Wooldridge's dashboard camera was also introduced into evidence and played for the jury. The recording generally confirms Wooldridge's testimony regarding the truck's acceleration out of the parking lot, its travel along the service road and the interstate, its exit over the grass median back onto the service road, and its turning onto the side street. The driver of the truck appears on the video. The only vehicles passed by the truck were the eighteen-wheeler and a white passenger vehicle as all three were merging onto Interstate 30. The white passenger vehicle slowed and pulled over to the right shoulder, although it is not clear whether it did so in response to the truck rapidly approaching from the rear or to Wooldridge's overhead lights and siren. The truck passed the white vehicle while it was still on the one-lane entrance ramp, crossing solid white lines onto the traffic lanes. Both the passenger vehicle and the eighteen wheeler were passed without incident, and no other vehicles are visible on the video in close proximity to the truck during the interstate portion of the chase. The truck traveled a short distance in

Wooldridge testified that he parked his car and proceeded on foot to locate the truck. He observed a fence that had been pushed down and the truck about sixty yards away, stuck in a creek. The driver's side door was open, and there was a short, stocky man standing at the door, leaning inside the truck, and removing items from it. Wooldridge testified that after another officer arrived on the scene, he approached the man and identified himself when he was about forty yards away. Wooldridge said the man dropped paperwork and started running up the hill toward Beverly Street. Wooldridge described how he and other officers formed a perimeter and searched for the man, eventually finding him hiding in a shed behind a house on the corner of Beverly and Rolling Hills Drive. He testified that the person found hiding in the shed was the same person he had seen leaning into the truck, and he identified Walsh as that person.[6] In addition, after Walsh had been apprehended, Wooldridge returned to the truck and gathered the papers that had been scattered on the ground and in the creek as Walsh ran up the hill. Wooldridge testified that some parole

---

the outer lane of the interstate, then again crossed solid white lines, crossing a merge lane, and exited across the grass median to the service road. When the truck exited the interstate on to the service road, there was another vehicle on the service road traveling the same direction as the truck several car lengths in front of it. The truck slowed and the other vehicle remained several car lengths in front of it until the truck turned onto Davis Circle. When Officer Wooldridge proceeded down Davis Circle, which is only one block long, there were several automobiles parked in driveways and only one automobile parked on the street.

[6]After identifying Walsh, Wooldridge testified:

> Q    [By the State]  So just to be clear, you're telling this jury the Defendant was the person over here you saw leaning in the truck messing around with papers?
> A    Correct.
> Q    The Defendant is the same person that threw the papers down and ran up the hill?
> A    Yes.
> Q    And the Defendant is the person down in that shed --
> A    Yes.
> Q    -- 200 yards away?
> A    Yes, sir.

paperwork containing Walsh's full name was among the documents he recovered. On cross-examination, Wooldridge readily acknowledged that he did not see Walsh driving the truck and that he first identified him when Walsh was standing at the driver's door gathering up papers in the truck.

Regarding Walsh's use of the truck as a deadly weapon, Wooldridge testified:

Q       [By the State]  Okay.  And is your testimony today whether or not Mr. Walsh used that truck on that day as a deadly weapon?

A       I don't believe so.  Well, in a -- in an evading situation, I mean, it can always come to that.  In evading in a vehicle, you can always come to that.

Q       What do you mean, it can always come to that?

A       Well, when someone is evading and trying to get away, there's always the situation where they could run over somebody on the Interstate or when he come off of the Interstate, there's -- there's joggers that run that service road all the time.  Somebody could have been at that.

In addition, while acknowledging that he lost sight of the truck once it turned down Davis Circle, Wooldridge testified:

Q       [By the State]  How fast did that truck have to be going down that city street to get completely out of your screen shot so that when you turn down that same street five seconds later, you don't catch him at all?

A       40 or above at least.

Q       Again I ask, do you think that truck, the way it was being used, was being used as a deadly weapon?

A       Quite possibly, yes, sir.

5

## II. Standard of Review

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* at 240.

Section 38.04 of the Texas Penal Code provides that "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). The offense is a third degree felony if the person

uses a vehicle[7] while fleeing.  TEX. PENAL CODE ANN. § 38.04(b)(2)(A); *Adetomiwa v. State*, 421 S.W.3d 922, 926 (Tex. App.—Fort Worth 2014, no pet.).  The indictment in this case alleged that on or about February 11, 2013, Walsh "while using a vehicle, intentionally [did] flee from BOBBY WOOLDRIDGE, a person the defendant knew was a peace officer, who was attempting lawfully to arrest or detain" Walsh.  To obtain a conviction, the State was required to prove beyond a reasonable doubt that (1) Walsh, (2) while using a vehicle, (3) intentionally fled from Wooldridge, (4) whom Walsh knew was a peace officer, (5) while Wooldridge was attempting to arrest or detain him.  *See Redwine v. State*, 305 S.W.3d 360 (Tex. App.—Houston [14th Dist] 2010, pet. ref'd).

In addition, the indictment alleged, in pertinent part, that "during the commission of the aforesaid offense[,] . . . [Walsh] did use and exhibit a deadly weapon, namely:   a motor vehicle that in the manner of its use and intended use was capable of causing death and serious bodily injury."  *See* TEX. PENAL CODE ANN. § 1.07(17)(B) (West Supp. 2014).  To sustain a deadly-weapon finding, the evidence must show beyond a reasonable doubt (1) that Walsh used or exhibited a motor vehicle in a manner that was capable of causing death or serious bodily injury, (2) that he did so during the commission of fleeing while using a vehicle, and (3) that other people were placed in actual danger.  *See Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014) (citing *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005)); *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009); *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003).

---

[7]A "vehicle" is defined as "a device that can be used to transport or draw persons or property on a highway."  *See* TEX. PENAL CODE ANN. § 38.04(c)(1) (West Supp. 2014); TEX. TRANSP. CODE ANN. § 541.201(23) (West Supp. 2014).

### III. Sufficient Evidence Supports Walsh's Conviction for Evading Arrest or Detention While Using a Motor Vehicle

In his first point of error, Walsh only argues that there is insufficient evidence that he used a motor vehicle while fleeing.[8] Walsh argues that although the evidence established that he fled on foot, there was no evidence that positively identified him as the driver of the truck.[9] The State argues that there is strong circumstantial evidence to establish Walsh as the driver of the truck and that evading arrest using a motor vehicle is a continuing offense until apprehension. We agree.

We agree with Walsh that "[a]n uncertain in-court identification of an accused as the perpetrator of a crime, standing alone, is insufficient to support a guilty verdict." *Anderson v. State*, 813 S.W.2d 177, 179 (Tex. App.—Dallas 1991, no pet.); *Swartz v. State*, 61 S.W.3d 781, 788 (Tex. App.—Corpus Christi 2001, pet. ref'd). However, "the identity of the perpetrator of an offense can be proved by direct or circumstantial evidence." *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (citing *Oliver v. State*, 613 S.W.2d 270, 274 (Tex. Crim. App. [Panel Op.] 1981) (op. on reh'g)). Thus, if the identification is equivocal, or if no witness positively identifies the defendant as the perpetrator of the offense, corroborating circumstantial evidence will support

---

[8]Walsh does not argue that there was insufficient evidence that he intentionally fled from a person he knew was a police officer so we need not address these elements. Nevertheless, we note that Wooldridge's testimony established that he activated both his overhead lights and siren as he approached the motor vehicle and the driver's reaction was to rapidly drive away in his truck, cross a grass median, and continue driving across a field until the truck became stuck in a creek. This testimony established that the driver of the truck intentionally fled from a police officer.

[9]Walsh also asserts that he submitted evidence of an unavailable witness who stated that Walsh was a passenger in the truck. However, the record reflects that the trial court did not accept the affidavit of this witness into evidence, and its content was not before the jury. Rather, the affidavit of the witness was tendered by Walsh to make a record in support of his motion for a continuance. In this Court, Walsh does not assert any error by the trial court in overruling the motion for a continuance and has therefore waived any alleged error concerning this ruling. Consequently, we do not consider the statements contained in the affidavit for any purpose.

a guilty verdict. *See id.* at 85; *Hernandez v. State*, 13 S.W.3d 78, 80–81 (Tex. App.—Texarkana 2000, no pet.); *Anderson*, 813 S.W.2d at 179.

In *Hernandez*, the appellant was charged with driving while intoxicated after a truck he owned struck a vehicle stopped to make a turn. *Hernandez*, 13 S.W.3d at 80. No witness could testify that they had seen the defendant driving the truck. *Id.* However, one witness testified that immediately after the accident, he had seen the defendant walking along the driver's side of the truck, and the driver of the other vehicle testified that the defendant had asked her if she was okay. *Id.* Although the defendant claimed that he had been a passenger and that the driver had run away, he was unable to identify the driver. Further, the other two witnesses testified that the defendant was the only person they had seen in the area. *Id.* We held that this circumstantial evidence was sufficient to support the guilty verdict. *Id.* at 80–81.

In this case, there is sufficient circumstantial evidence to support a finding that Walsh was the driver of the truck. Nelson testified that he only saw one person in the truck and that the person entered on the driver's side and was a short man. Wooldridge testified that he only saw one man in the truck as he was pursuing it. The recording from his dash camera shows that the driver of the truck is short in stature. He also testified that within a very brief timeframe after the vehicle pursuit, he located the truck stuck in the creek, and he only saw one man, who was short and stocky, standing at the driver's side door. Wooldridge said the man, whom he positively identified as Walsh, was leaning into the cab of the truck, gathering items from inside. When Wooldridge identified himself, Walsh fled on foot, scattering the items on the ground as he left. Walsh was later found hiding in a shed in the vicinity. Finally, Wooldridge testified that among the items

found scattered on the ground was parole paperwork containing Walsh's name. Based upon this evidence, a rational jury could find beyond a reasonable doubt that Walsh was the driver of the truck. Therefore, this evidence is sufficient to support a finding that Walsh was the driver of the truck and, consequently, the verdict. We overrule this point of error.

**IV.      The Evidence is Sufficient to Support a Deadly-Weapon Finding**

Since Walsh asserts that there is insufficient evidence to support a deadly-weapon finding, "we must decide whether, in viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that [Walsh] used or exhibited his [truck] as a deadly weapon when he was [evading arrest]." *Sierra*, 280 S.W.3d at 255 (citing *Cates*, 102 S.W.3d at 738). We examine "the manner in which the defendant used the motor vehicle during" the offense and consider whether "the motor vehicle was capable of causing death or serious bodily injury" during the offense. *Id.* (citing *Drichas*, 175 S.W.3d at 798). A deadly-weapon finding may only be sustained if there is "evidence that others were actually endangered, not 'merely a hypothetical potential for danger if others had been present.'" *Cates*, 102 S.W.3d at 738 (quoting *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *adopted by Mann v. State*, 58 S.W.3d 132 (Tex. Crim. App. 2001)); *see also Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014).

In *Drichas*, the evidence showed that the defendant recklessly pulled out of a parking lot, leading law enforcement officers on a high-speed chase for about fifteen miles. *Drichas*, 175 S.W.3d at 797. During the chase, the defendant's truck fishtailed as it went through turns and the defendant ran stop signs, disregarded traffic signs, drove erratically, turned abruptly, wove

10

between lanes, and drove on the wrong side of the road. *Id.* One officer testified that there was some traffic on the road during the chase. *Id.* In finding that this was legally sufficient evidence to support a deadly-weapon finding, the court found that Drichas'

> manner of using his truck posed a danger to pursuing officers and other motorists that was more than simply hypothetical; the danger was real, and the manner in which appellant drove his truck made it capable of causing death or serious bodily injury, particularly where appellant drove on the wrong side of the highway.

*Id.* at 798. The court also noted that "evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner" is sufficient to support a deadly weapon finding. *Id.* at 799 (citing *Mann*, 13 S.W.3d at 92).

While the evidence in this case does not show that Walsh ran stop signs or led officers on a lengthy chase, *Drichas* nevertheless applies to this case. As noted previously, the recording[10] shows that Walsh rapidly accelerated on the service road, then abruptly swerved onto the entrance ramp. Also on the entrance ramp were an eighteen-wheeler and a white passenger vehicle. As Walsh sped toward the passenger vehicle and passed it on the left, the passenger vehicle abruptly pulled over to the right shoulder. Walsh continued to accelerate into the traffic lanes, crossing solid white lines and passing both the passenger vehicle and the eighteen-wheeler. In a short distance, Walsh again crossed two solid white lines, another merge lane, and the grass median as he illegally exited to the service road. Walsh argues that he merely passed the passenger vehicle

---

[10]Walsh argues that there is no evidence that he used the truck as a deadly weapon and points to Wooldridge's initial testimony that he did not believe the truck was used as a deadly weapon. We agree that Wooldridge's testimony is equivocal and, standing alone, might not be sufficient to support a deadly-weapon finding. However, as the State points out, the recording from the dash camera is the best evidence of Walsh's actions.

and the eighteen-wheeler on the left, yet he did so at a high rate of speed[11] while these vehicles were still on the one-lane entrance ramp.

Although this is a close question, and possibly represents the outer limits of sufficient evidence to establish that a vehicle was used as a deadly weapon, the jury viewed the dash camera video of the pursuit and was able to form its own, independent evaluation of whether there was "evidence that others were actually endangered, not 'merely a hypothetical potential for danger if others had been present.'" *Cates*, 102 S.W.3d at 738. Having reviewed the recording and having evaluated it in light of the standard set forth in *Drichas*, we cannot say that no rational jury could reach the verdict this jury reached. In other words, a rational jury could find beyond a reasonable doubt that Walsh used the truck in a manner that was capable of causing death or serious bodily injury and that he placed other people in actual danger based on the evidence presented. Therefore, we find that there is sufficient evidence to support the jury's deadly weapon finding.

---

[11]Although he never exceeded the posted speed limit on the interstate, the rate at which he accelerated to enter the interstate and at which he passed the other vehicles already on the entry ramp was excessive.

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     September 8, 2015
Date Decided:       December 10, 2015

Do Not Publish