**Affirmed and Memorandum Majority and Concurring Opinions filed August 27, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00583-CR

---

**DESMOND LOTT KENNARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1449233**

---

### MEMORANDUM MAJORITY OPINION

In this appeal from a judgment adjudicating guilt, appellant argues in a single issue that the trial court abused its discretion when it found that he had violated a condition of his community supervision by committing a new offense. For the reasons given below, we overrule this issue and affirm the trial court's judgment.

## BACKGROUND

Appellant was charged with compelling the prostitution of a child. He pleaded guilty to that charge, but the trial court deferred an adjudication of guilt and placed him on community supervision for a period of ten years.

The State subsequently moved to adjudicate appellant's guilt, alleging that appellant had violated the terms of his community supervision by committing a murder. The State also alleged additional violations, including the use of a controlled substance, and the failure to pay fines and court costs.

Appellant pleaded not true to all of the allegations. Following a two-day evidentiary hearing, the trial court granted the State's motion and assessed appellant's punishment at sixty years' imprisonment. The trial court did not make any oral findings, but in its judgment adjudicating guilt, the trial court made a single written finding that appellant had committed the murder.

## ANALYSIS

In a motion to adjudicate guilt, the State has the burden of proving that the defendant violated a condition of his community supervision by a preponderance of the evidence. *See Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). This evidentiary burden is not as rigorous as the "beyond a reasonable doubt" standard required to obtain a conviction. *Id.* at 865. To satisfy the lesser preponderance standard, the State must only prove that the "greater weight of the credible evidence . . . would create a reasonable belief that the defendant has violated a condition of his probation." *Id.*

When a defendant challenges a revocation finding made under the preponderance standard, the appellate standard of review is whether the trial court abused its discretion. *Id.* The test for abuse of discretion is not whether, in the

opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules or principles. *See Howell v. State*, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005).

The State alleged here that appellant violated his community supervision by murdering a man who went by the moniker of "Duck." There is no dispute that Duck was indeed murdered; the evidence established that he died after being shot six times. The only disputed question was whether appellant was the culpable party.

As to that element of identity, the State relied on the combined and cumulative force of the testimony from two different witnesses.

The first witness was one of Duck's female companions, Tijana. She testified that she went to an apartment complex late at night, along with Duck and their mutual friend, Shay. Tijana said that they were all waiting in the parking lot, for reasons that were unclear to her, and that a man approached their car and began to have a conversation about a subject that she could not remember either. Tijana said that she had "probably" seen this man before, but she did not know him personally. She said that words were exchanged, and that the man approached Duck's side of the vehicle and shot Duck multiple times.

The remainder of Tijana's testimony was noncommittal. She testified that she did not remember speaking with investigators in the days after the murder. She also testified that she did not remember being shown a six-person photo array containing appellant's picture, even though she agreed that the admonishments attached to the photo array contained her signature. And when asked whether she could make an in-court identification of Duck's shooter, Tijana responded, "No. I don't know."

As possible explanations for her evasive memory, Tijana testified that she had since been in a terrible car accident. She also said that she was afraid to testify because Shay—the only other witness to the murder—had since gone missing. In addition, the revocation hearing occurred almost five years after the murder.

The State's other witness was a homicide investigator. He testified that he had identified two possible suspects in the murder. One suspect lived at the apartment complex where the murder occurred, but the investigator indicated that this suspect was eliminated as a possibility, in part because that suspect possessed a weapon that did not match the caliber of firearm used in the murder.

The other suspect was appellant. The investigator said that he produced a single photograph of appellant, which he showed to Shay a few hours after the murder. He also said that he produced a six-person photo array containing a picture of appellant, which he gave to another officer to administer to Tijana three days after the murder. The State offered a copy of this photo array into evidence, but the defense lodged a hearsay objection because the photo array contained the investigator's handwritten notes of what the other officer had told him regarding Tijana's identification. The trial court sustained the objection and the photo array was not admitted. Nevertheless, the investigator testified that Tijana had made an identification in the photo array. Even though the investigator did not affirmatively reveal whom Tijana had identified in the photo array, or what Shay had said when she was shown appellant's individual photograph, the investigator testified that his "next step" after speaking with Tijana and Shay was drafting a murder charge against appellant.

Appellant argues that, without direct evidence that he committed the murder, a reasonable fact finder could only speculate about that ultimate fact. We disagree. Circumstantial evidence is just as probative as direct evidence, and circumstantial

4

evidence alone can be sufficient to establish a defendant's guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Here, the circumstances showed that Tijana witnessed a murder, that she made an identification in a six-person photo array just three days after the murder, and that the investigator drafted a murder charge against appellant as his "next step" following Tijana's identification. While the charge itself is not evidence of a crime, a fact finder could rationally infer from this sequence of events that the investigator pursued the murder charge against appellant because Tijana had identified appellant as the murderer in the photo array. *See Head v. State*, 4 S.W.3d 258, 261 n.2 (Tex. Crim. App. 1999) (stating that an "inescapable inference" can be drawn about an eyewitness's description of a suspect based on the officer's conduct after speaking with the eyewitness).[1]

Appellant responds that *Hacker* precludes the trial court from inferring that ultimate fact. But the issue in *Hacker* did not involve a question of identity. Instead, the issue there was whether the trial court could reasonably infer that the defendant had violated a no-contact order when there was no evidence that the prohibited conduct had even occurred. *See Hacker*, 389 S.W.3d at 873–74. Because there is no dispute that prohibited conduct had occurred in this case—the evidence conclusively established that a man was murdered and that Tijana had witnessed it—we conclude that *Hacker* does not inform our analysis here.

Appellant also argues that the trial court abused its discretion because Tijana testified that she could not identify him in court as Duck's shooter. But that testimony merely created a conflict in the evidence, which the trial court was free to

---

[1] The officer's testimony about his conduct after the photo array might be akin to indirect or "back door" hearsay, but appellant did not lodge such an objection in the trial court. In any event, when sufficiency of the evidence is challenged, a reviewing court must consider all of the evidence presented at trial, regardless of whether it was improperly admitted. *See Green v. State*, 893 S.W.2d 536, 538 (Tex. Crim. App. 1995).

resolve on its own, especially considering Tijana's other explanations that her memory was faulty after being in a car accident, that she was afraid of testifying, and that the murder had happened nearly five years earlier. *See Oliver v. State*, 613 S.W.2d 270, 273–74 (Tex. Crim. App. 1979) (op. on reh'g) (concluding that the evidence was sufficient to support the element of identity, despite the complainant being unable to identify the defendant in court, because the complainant had previously identified the defendant out of court).

Based on the foregoing, we conclude that the trial court could have found from the greater weight of the credible evidence that appellant violated the terms of community supervision by committing Duck's murder. We likewise conclude that the trial court's finding was not an abuse of discretion.

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Spain and Poissant. (Spain, J., concurring).

Do Not Publish – Tex. R. App. P. 47.2(b).